J. H. KING v. W. S. LEE AND TALLASSEE POWER COMPANY.

(Filed 11 December, 1929.)

**Master and Servant C a—In this case held: there was no evidence of master's negligence and nonsuit was proper.**

　　Where the evidence of the plaintiff discloses the mere fact of injury resulting from falling while elevated in a "boister saddle" operated by a fellow-servant by means of block and tackle, a nonsuit is properly entered, negligence not being ordinarily presumed from the mere fact of injury.

CIVIL ACTION, before *Sink, Special Judge,* at February Special Term, 1929, of MECKLENBURG.

Plaintiff alleged that on 7 December, 1927, he was in the employ of the Power Company, helping to erect a power house near High Rock, N. C., and that he was seriously and permanently injured by reason of negligence of defendant.

The plaintiff's narrative of his injury is substantially as follows: "I was putting in a window frame at the top of the power house, at about forty feet above the ground. I was in a boister saddle, supported with a block and tackle. Two men pulled me and the boister saddle up with their hands to the place where I was to work. They pulled me up by the fall line; I was kept up there by a man holding the rope. . . . Frank Lawrence was the person to hold the rope. He did not hold the rope, but pulled me up and tied me. I found that out when I looked back down. I looked at my watch and it was five minutes until twelve, and I told him to let me down, and I looked out of the saddle, and he was propped up on the hand rail of the stairway on one elbow; when I told him to' let me down, he turned around, and I reached around to get my pliers

out of the window to put them in my pocket before I came down, and that is the last thing I remember. When I looked down Frank Lawrence did not have hold of the rope. I do not know what happened after I looked around to get my pliers out of the window. I do not remember starting to fall. Beneath where I was working, there were iron steps which lead from the switchboard floor down to the basement. It was about thirty feet from where I was in the air to the top of the iron steps and about forty feet to the ground. . . . Mr. Vickery and Mr. Lawrence and I were working on the window at the time I had the fall. I was pulled up that morning. I was in what is called a boister seat, which means a seat with a rope fastened to each end. As I worked over different points of this window, I was pulled up and lowered, so as to reach the point on the window where I had to work, by Mr. Lawrence, and Mr. Lawrence was on the ground handling the rope. That was the customary way of doing that kind of work. When I got ready to come down I called Mr. Lawrence to let me down, which he did. Mr. Lawrence did not have hold of the rope when I looked down to ask him to let me down. He was standing close to the rope, but he did not have his hand on it. I did not see Mr. Lawrence just immediately before I started to fall because, in the meantime, I reached over to get my pliers out of the window. After I reached over to get my pliers I fell. And from the time I told him to let me down until I started to fall, I did not look down at him, and don't know whether he had the rope tied to the railing or not. I didn't notice whether he had it around the railing. I had been up there at that time about a half hour or an hour. I turned around to get my pliers and then fell."

There was evidence tending to show that the plaintiff stayed in the hospital until 22 December, when he went to his home, remaining there until about 6 January, 1928, when he returned to the hospital and remained there about ten days.

There was evidence that on 19 December the defendant had paid to the plaintiff the sum of. $240 in cash, in full settlement of his injury, and that plaintiff had duly executed a release. The release was pleaded as a defense, but the plaintiff offered evidence tending to show that at the time the money was paid, he did not have sufficient mental capacity to understand the nature of the transaction.

The defendant offered no evidence. Hence the plaintiff's narrative of the injury is the only evidence thereof in the record. Plaintiff took a voluntary nonsuit as to the defendant, W. S. Lee. There is evidence that the plaintiff had sustained serious injury.

At the conclusion of plaintiff's evidence the defendant moved for judgment of nonsuit, which motion was allowed, and the plaintiff excepted and appealed.

KING v. POWER COMPANY.

G. T. Carswell and Joe W. Ervin for plaintiff.
R. L. Smith & Sons and W. S. O'B. Robinson, Jr., for Power Company.

BROGDEN, J.   There is no evidence tending to show that the boister saddle was defective or that it was not an appliance approved and in general use or in any particular an unsafe appliance; neither was there evidence that any negligent order had been given with respect to the operation thereof.

The evidence does not disclose whether the boister saddle fell or whether the plaintiff fell out of the saddle.   Plaintiff testified that his fellow-servant, Lawrence, did not have hold of the rope "when I looked down to ask him to let me down.   He was standing close to the rope, but he did not have his hands on it."   The evidence discloses the injury and no more.   It has been consistently held by this Court that the mere fact of injury is in itself ordinarily no evidence of negligence.   *Fore v. Geary,* 191 N. C., 90, 131 S. E., 387; *Burke v. Carolina Coach Co., ante,* 8.

The facts presented bring the case squarely within the principle declared in *Michaux v. Lassiter,* 188 N. C., 132, 123 S. E., 310.   The Court said: "Considering the record in view of these authorities and the principles they approve and establish, there has, as stated, been no breach of duty shown on the part of defendant company, the proof and admissions showing that the machine was of standard make, newly purchased and installed, and as a mechanical proposition, operating properly at the time.   Nor is there anywhere evidence of default in reference to selecting the operator, and on the facts offered by the plaintiff the injury is necessarily attributable and attributable only to an exceptionally negligent act of the operator of the machine, who either failed to fasten the pan or released it in breach of his duty to his fellows.   There is no testimony or suggestion that the operator had any authority over the intestate, or tending to show that he stood towards the latter in the place of his principal, being only a fellow-servant.   The injury was due solely to his default, and the court has correctly ruled that no cause of action has been shown."

A careful scrutiny of the record leads us to the conclusion that the judgment of nonsuit was properly entered.

Affirmed.