LOUISE ORR, ADMINISTRATRIX, v. JOHN B. RUMBOUGH.

(Filed 19 December, 1916.)

**1. Master and Servant—Employer and Employee—Dangerous Work—Duty of Employer.**

　　It is the duty of an employer to furnish the employee, while engaged within the scope of his duties, a reasonably safe place to work, reasonably safe appliances, and to give such inspection to the premises and appliances as are necessary to keep them in this condition, and to warn the employee of dangers known to him or which he should have known by the exercise of ordinary care, and which were unknown to the employee or which he could not discover in the careful performance of his duty.

**2. Same—Instructions—Trials—Burden of Proof.**

　　In an action to recover of the employer damages for the negligent killing of an employee, alleged to have proximately resulted from the failure of the former to instruct the latter in doing dangerous work required of him in the course of his employment, the burden is upon the plaintiff to show that the defendant knew of the defect or danger or that it could have discovered it in the exercise of ordinary care, with the presumption that it was familiar with the dangers ordinarily accompanying that character of work.

**3. Master and Servant—Negligence—Presumptions—Res Ipsa Loquitur—Exceptions to Rule.**

> The exception to the general rule which raises a presumption of negligence where a personal injury occurs to an employee under conditions exclusively within the control of the employer, is not applicable when all of the facts are known, and they rebut the presumption, or where the injurious occurrence could not happen without the voluntary act of the injured person, or where both were in the exercise of an equal right and chargeable with the same degree of care.

**4. Same—Trials—Evidence—Dangerous Work—Delegated Duty.**

> Where the plaintiff's intestate, a man experienced in such work, had been employed by the defendant as foreman in his repair shop, and the defendant had the plaintiff to install a welding machine under the instruction and with the assistance of an expert sent from the factory for the purpose, leaving the two in full charge; and the intestate and the expert, by faulty construction, had permitted coal oil to leak upon the floor, become mixed with chemicals used in a retort, which afterwards caused an explosion in the retort resulting in the intestate's death; and there is no evidence that the defendant should reasonably have known the effect the oil would have on the chemicals: *Held*, insufficient to show that the plaintiff had failed in the performance of any duty he owed the intestate, his employee, and a judgment as of nonsuit should be entered. The doctrine that an employer may not escape liability by delegating to another duties he is required to perform are inapplicable to the facts of this case.

APPEAL from *Adams, J.*, at August Term, 1916, of BUNCOMBE.

This is an action to recover damages for the wrongful death of the intestate of the plaintiff, caused, as the plaintiff alleges, by the negligence of the defendant—

(*a*) Installing a highly and intrinsically dangerous welding machine in their place of business, where the plaintiff's intestate's duties required him to work.

(*b*) In exposing the plaintiff's intestate to dangers of said intrinsically dangerous welding machine and the operation of the same.

(*c*) In requiring plaintiff's intestate, B. L. Orr, to work in the room with the welding machine and in and around the same, the said B. L. Orr being ignorant of the dangers of said machine and inexperienced in the operation of the same.

(*d*) In permitting coal oil and other foreign substances to become mixed with the chemicals which were being used for the purpose of generating oxygen gas.

(*e*) In failing to furnish the plaintiff's intestate, B. L. Orr, with a safe place in which to work and reasonably safe tools, appliances, and machinery with which and around which to perform his duties.

The defendant denied that the intestate of the plaintiff was in his employment at the time of his death, denied negligence, and pleaded contributory ngligence.

The immediate cause of death was the explosion of a retort, a part of a welding machine. The defendant was engaged in the automobile business and in repairing and selling automobiles, and became proprietor of a suitable building and furnished it with necessary machinery and appliances for carrying on the business, and employed as foreman B. L. Orr, intestate of the plaintiff, a man 28 years of age, intelligent, of good habits, and a skilled machinist of eight years experience. This foreman had charge of the tools and machinery and the employees engaged to work with and operate the same, and among the implements were a "blower, a blacksmith forge and anvil for hammering out and shaping up tools." The forge was open, not inclosed in any way.

Some time in November, 1914, one Ray, representing the George C. Shemmel welding machine, made at a factory in Ohio, had negotiations with defendant in his office, in said building, and talked with him about the machine, and at first defendant said he wasn't favorably impressed, but said they needed a machine to do the right kind of work. Ray got defendant interested in this machine and told him what it would do, and defendant said to Ray: "If that machine would do what he claimed it would, it was what he wanted." This was the starting point of the negotiations. Defendant called his foreman downstairs by phone, Mr. Orr, and said to him: "Mr. Orr, this man claims to have a machine to do the work that you want done, and if it is what he says it is, we will put one in. I would like to have you know about it." Ray thinks this was said on his second visit in January, but he didn't close the deal for two or three visits after that; that Orr, the man defendant was intending to operate the machine, couldn't get away to go to the factory to get instructions, they were so busy. Finally Ray agreed to bring an expert down from the factory to the plant and instruct Mr. Orr there. This plan was adopted and Ray succeeded in selling one of the machines, and sent the order to the factory and the factory shipped the goods and sent an expert, one McAvoy, to teach Orr. When the machine arrived it was put up in the Enterprise Machine Company and was demonstrated and tested by Ray, McAvoy, and Orr for about a week or ten days, and Ray told defendant, having learned this from the expert, McAvoy, that it would be necessary to have a pre-heating machine to have a successful job. Ray described the pre-heater as "a furnace to heat up the piece you are going to weld."

McAvoy and Orr constructed the pre-heater, making an iron box and connecting it with pipes to convey into it *coal oil,* and, after making this connection, turned on the oil, some of whch leaked or spilled out on the floor and became in some way mingled with the chemicals used to produce oxygen gas.

This mixture of the oil and the chemicals was placed in the retort of the welding machine by Orr and McAvoy, and caused the explosion, which occurred about a half-hour thereafter.

The pre-heating machine was completed about 6 o'clock of the evening before the accident, which was at about 11 o'clock in the morning.

The office of the defendant was not on the same floor with the welding machine, but he passed on this floor soon after its completion, and, seeing oil on the cement floor, said it was dangerous, and directed it to be wiped up, which was done.

His Honor, among other things, charged the jury as follows:

"There is no evidence in the case sufficient to be considered by the jury that the defendant John B. Rumbough was negligent in installing a highly and intrinsically dangerous machine in the place of business, as alleged, where the plaintiff's intestate's duties required him to work; nor is there any evidence sufficient to be considered by the jury that John B. Rumbough was negligent in requiring plaintiff's intestate, B. L. Orr, to work in the room with the welding machine, and in and around the same. That is to say, there is not sufficient evidence that there was negligence on the part of the defendant as to the installation of the machine, nor in the mere fact that the deceased was required to work in the room in which the machine was installed."

The allegations relied on on the part of the plaintiff are these: (1) that the intestate was ignorant of the dangers of the machine and inexperienced in operating it; (2) that the defendant negligently allowed coal oil to become mixed with the chemicals which were being used for the purpose of generating oxygen gas; and (3) that the defendant failed to furnish the deceased with a reasonably safe place in which to work and reasonably safe tools, appliances, and machinery with which and around which to perform his duties.

At the conclusion of the evidence there was a motion for judgment of nonsuit, which was overruled, and the defendant excepted.

There was a verdict and judgment in favor of the plaintiff, and the defendant appealed.

*Martin, Rollins & Wright for plaintiff.*
*Merrimon, Adams & Johnston for defendant.*

ALLEN, J. The verdict establishes the fact that the intestate of the plaintiff was in the employment of the defendant at the time of

his death, and this relationship imposed on the defendant the duty of providing a reasonably safe place to work, reasonably safe appliances, and to give such inspection to the premises and appliances as was necessary to keep them in this condition, and to warn the employee of dangers known to the employer of which he might know by the exercise of ordinary care, and which were unknown to the employee or which he could not discover in the careful performance of his duty. *Womble v. Grocery Co.,* 135 N. C., 479; *Marks v. Cotton Mills,* 135 N. C., 290; *Hicks v. Mfg. Co.,* 138 N. C., 325; *Mincey v. R. R.,* 161 N. C., 471, and many other cases.

The duty to warn or instruct is more insistent when the employee is inexperienced, and is subject to the following qualifications, which must be shown in order to impose liability:

"1. That the master was chargeable with knowledge, actual or constructive, of the existence of the risk.

"2. That the servant himself did not appreciate the risk, and that his nonappreciation thereof was excusable.

"3. That the master knew, or ought to have known, that the plaintiff was thus excusably ignorant of the risk, and was by reason of such ignorance exposed to abnormal hazard, over and above those which he was presumed to contemplate as incidents of the employment." 3 Labatt M. and S., sec. 1141.

"The second fact, which, as stated in par. 1141, *ante,* must be established in order to justify the conclusion that the master was negligent, is that the dangers with regard to which there is alleged to have been a duty of instruction were not known, either actually or constructively, to the servant. The absence of any obligation to instruct a servant who is proved by direct evidence actually to have had as complete knowledge of the danger and of the appropriate means of avoiding it as the master could have imparted to him is too obvious to admit of controversy." 3 Labatt M. and S., 1143.

A breach of either of these duties would be negligence, and, if the proximate cause of the death of the intestate, actionable.

The burden was on the plaintiff to prove the breach of duty, and when this consists of some defect in appliances or ways or place to work or dangers incident to the work, the employee must show that the employer knew of the defect or danger or that he could have discovered it by the exercise of ordinary care (*Hudson v. R. R.,* 104 N. C., 491; *Blevins v. Cotton Mills,* 150 N. C., 499; *Pritchett v. R. R.,* 157 N. C., 100); but the employer is presumed to be familiar with dangers ordinarily accompanying the business in which he is engaged, "on the ground that a person who combines with the ordinary measure of intelligence which the law presumes every citizen to possess, the

special requirements of persons engaged in the given occupation, cannot, supposing him to have made a reasonably careful use of his faculties, fail to understand the extent and nature of the perils normally incident to that occupation." 3 Labatt M. and S., sec. 1029.

In assuming the burden of proof, the plaintiff cannot usually rely on proof of the injury alone, as the general rule is that the injury neither raises a presumption nor is it evidence of negligence (*Patton v. R. R.*, 179 U. S., 658; *Shaw v. Mfg. Co.*, 143 N. C., 134); but there is a well recognized exception to this rule to the effect that "When the thing is shown to be under the management of the defendant or his servant, and the accident is such that as in the ordinary course of things does not happen if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

This principle was declared in 1865 by *Earl, C. J.*, in *Scott v. London Dock Co.*, 3 H. and C., 134, and has been adopted in many of the States, as will be seen by reference to the notes in 113 A. S. R., 1000, and particularly in this State in *Stewart v. Carpet Co.*, 138 N. C., 67; *Ross v. Cotton Mills*, 140 N. C., 122; *Fitzgerald v. R. R.*, 141 N. C., 540; *Turner v. Power Co.*, 154 N. C., 138; *Ridge v. R. R.*, 167 N. C., 510.

There is much conflict of authority as to whether the principle is applicable to explosions (see note 113 A. S. R., 1000 *et seq.*, and note to *Lykiordopoula v. R. R.*, Anno. Cases, 1912 A, 980); but, however this may be, there are limitations upon the application of the exceptions which are thus stated by Professor Wigmore in 4 Wigmore on Evidence, sec. 2409, and approved in *Stewart v. Carpet Co.*, 138 N. C., 66. "(1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) Both inspection and user must have been, at the time of the injury, in the control of the party charged; (3) The injurious occurrence must have happened irrespective of any voluntary action at the time by the party injured." He further says that "The doctrine is to some extent founded upon the fact that the chief evidence of the true cause of the injury, whether culpable or innocent, is practically accessible to the party charged and perhaps inaccessible to the party injured."

It is thus seen that the basis of the exception is common experience, and that it is allowed from necessity when the causes of an injury cannot be clearly shown by the injured party and ought to be known to the employer, and that it is not properly applied when all the facts are known and they rebut the presumption of negligence, or when

the injurious occurrence could not happen without the voluntary act of the person injured.

"To render the maxim applicable the thing causing the injury must be shown to have been in the exclusive control of defendant; and the rule has no application where the injured person and the alleged negligent person were both in the exercise of an equal right and were each chargeable with the same degree of care. Nor does it apply where the cause of the accident is known, or where the injury was the result of two or more concurring causes." 29 Cyc., 592.

Let us, then, apply these principles to the evidence.

The defendant purchased a welding machine from a responsible party, and there is no evidence that it was not suitable for the purposes for which it was bought or that there were any defects in it.

He was not acquainted with the proper manner of installing the machine, nor did he know how to operate it, and he therefore made it a part of the contract that the seller would send an expert to install it and to instruct the intestate, who was himself an experienced workman and machinist, how to operate it.

The expert was not in the employment of the defendant, but of the seller of the machine, and the machine was not bought until after consultation with the intestate, who was foreman of the defendant.

The expert came and he and Orr, the intestate, after installing the machine, operated it for about two weeks without difficulty and without complaint. They together had complete and exclusive control of the machine and of the room where it was located. They concluded that it was necessary to construct a heating box in which iron, steel, and other material could be heated before it was welded. The intestate, Orr, and McAvoy, the expert, constructed this heating box and completed it about 6 o'clock of the evening before the accident, which occurred the next morning at about 11 o'clock.

In constructing this box they used pipes for the purpose of conducting oil to the box, and after 6 o'clock it was found that these pipes, constructed by Orr and the expert, leaked, and that oil coming from the pipes was on the cement floor.

The defendant, passing through the room about this time, directed that the oil be removed, as it was dangerous, and this was done.

On the next morning Orr and McAvoy began work about 8:30 o'clock and about a half-hour before the accident they placed in the retort chemicals, manganese, and chloride of potassium, which were in wooden boxes kept on the floor where the oil had escaped. That the combination of the oil and the chemicals created a high explosive, and in a short time the retort exploded, killing the intestate and McAvoy.

There is no evidence that the defendant knew that the combination of the oil and the chemicals would create an explosive, and he directed that the conditions which brought this about should be removed. The pipes which leaked were constructed by the intestate and McAvoy and they had complete control at the time of the accident, of the welding machine, the heating box, and of the floor where they were situated, and it was their duty to see that they were kept in proper condition, and there is neither allegation nor proof that the defendant failed to warn or instruct the intestate, if required to do so under the circumstances.

There cannot be, under these conditions, any negligence upon the part of the defendant unless he is charged arbitrarily with knowledge of the change in the chemicals by contact with the oil, and in failing to warn the intestate. This aspect of the case is fully met by the fact that he requested the seller of the machine to send an expert, who is presumed to have had knowledge not only of the installation and operation of the machine, but of the quality of the chemicals, and that he would not only keep the premises safe, but would warn the intestate of any dangers, and by the fact that the conditions which caused the explosion were created by the intestate and McAvoy, and that they had more perfect knowledge and better opportunity to know than the defendant.

Why impute to the defendant knowledge when the intestate knew or ought to have known more than he? and why require him to warn of dangers of which he did not know, when the intestate had more perfect knowledge, and had by his side an expert to warn and instruct him?

We do not modify the rule which prevails with us, that the employer cannot delegate the duties which devolve upon him as employer; but when all of the circumstances are considered, there is nothing in the record which tends to prove that the defendant failed to exercise the care of a man of ordinary prudence, and the death of the intestate must be referred to accidental causes or to causes created by and under the control of the intestate.

The motion for judgment of nonsuit ought to have been allowed.

Reversed.