C. B. FORE v. J. M. GEARY AND F. S. TERRY.

(Filed 27 January, 1926.)

**Master and Servant—Negligence—Safe Place to Work—Evidence—Accident—Nonsuit.**

> It is the duty of the employer to furnish his employee a safe place to work, by the exercise of ordinary or commensurate care, and evidence is insufficient which tends to show that an employee acting under the direction of the defendant's vice principal, was injured in the course of his employment as stone mason on a building, by the unforeseeable and unaccountable falling of a steel beam upon him, after it had been put in place by the carpenters at work on the building, which was one of many similarly placed, which did not fall, there being no evidence of any defect in the beam or its manner of placing, which caused the fall.

APPEAL by plaintiff from *Dunn, J.,* at October Special Term, 1925, of BUNCOMBE. Affirmed.

Action to recover damages for personal injuries alleged to have been caused by negligence of defendants. From judgment as in case of nonsuit, rendered at close of plaintiff's evidence, upon motion of defendants, plaintiff appealed.

*Mark W. Brown for plaintiff.*
*Merrimon, Adams & Adams for defendants.*

CONNOR, J. On ........ November, 1924, plaintiff was at work, as a stonemason, on a building located near Black Mountain, North Carolina, then in process of construction by defendant, J. M. Geary, as contractor for defendant, F. S. Terry, as owner. He was 53 years of age, and had been a stonemason for twenty-five years. He had been at work on this building about two months. It was a large building, and was to be used as a residence by defendant, F. S. Terry. The outside walls were of

stone. On said day carpenters were at work inside the building; there was quite a number of men working there, carpenters, stonemasons and others. The roof had not been completed. The building was in process of construction, carpenters, stonemasons and others all being at work at the same time upon the building.

Plaintiff, as a witness in his own behalf, testified as follows: "On the day of the accident, I was working in one of the rooms—had been working there about half an hour when I was injured. Mr. Cordell was foreman of the stone work and put me to work there; he was just off the room. He called me and told me to take my tools and build up a place in that room; he could see the place where he told me to work, for it was open. At that time the carpenters were at work above the place where I was told to go to work; there were two of them. The foreman was in a position to see the carpenters when he told me to go there to work. They had torn out a hole for a pipe to go through—a tap for a sewer, or some kind of pipe. They made the hole bigger. The ceiling was constructed of metal beams; I believe the beams started at sixteen feet and ran down; they ran kind of corner-ways across the corner of the house and were of different lengths. At the place where I was filling in the hole in the wall, the beams were something like 12 or 14 feet long. I had nothing to do with the metal beams at all. I had nothing to do with the work of these carpenters.

"A beam went over the place where the stone was torn out, and I was sent in there to build up the wall. I commenced at the floor and was building up that hole inside the wall. Several beams had been set at or about the place where I was working, and the carpenters had gotten to that place and missed one. I lacked about six feet of having this cut-out place built up where the beam could be laid. The ceiling was about nine feet high and I was squatting down hammering stone at the time I was hurt. I was on a little scaffold about three feet high and laid some stone up and got up on top of the scaffold and while I was in that position one of those metal beams fell down on me; it struck me on the back of my head, and slipped down and caught me on my shoulders—hit me on the shoulders and head; it addled me for a little bit, and then after I came to I went on to work that evening. I went to Mr. Cordell and told him I had got hurt. I went back after awhile and worked the rest of the evening. From the time I received the injury I hurt in my shoulders and head and all down my side. It lasted three months. I lost about three months. I could not work on a high scaffold. I had spells with my head and had to quit driving my car because I would have dizzy spells.

"I worked under those men because the foreman sent me there. The man and the beam both fell on me; at the time, I was hunkered down

with my eyes on the stone, away from the beam; the man was on the beam when it struck me; he was up there doing something. I did not see what made the beam fall."

Mr. Hemphill, a witness for plaintiff, testified: "I am a carpenter. I was working on the building being erected for Mr. Terry near Black Mountain by Mr. Geary at the time plaintiff, Mr. Fore, was injured. I was placing the beams at the time—metal beams. Mr. Kerlee was working with me. The long beams had all been set up to this place, and we could not set the next beam until somebody filled in the space made by the hole in the wall. We jumped over the space where Mr. Fore was working. The last beam we set was about 22 inches from the opening where he was working; the beams were 22 inches apart. After we set the beams we would nail wood strips across them to take care of the floor—to nail the floor to—and when we would set them the distance they were supposed to be, we would nail a strip to hold them in place until the masons came along and built the wall up. We did not nail the beams right around Mr. Fore with strips. We were fixing to nail them, and in some way this one turned; I don't know what was the cause of it. I looked afterwards but could not determine. It had been setting on a small foundation, a stone in the wall kind of rounded, and this stone turned with the weight of the beam, and I fell with it; I don't know whether or not it was loose; anyway it tripped me and I fell. I was going there to fasten it down and I caught on the other beam. Probably caught this one with my left hand. I was working under Mr. Lyman, the foreman of the carpenters. I had no connection with Mr. Cordell, the foreman of the stonemasons. I don't remember whether I stood on the beam or not; but I know I had picked up a piece of timber to nail those strips across. I was at work in connection with my employment on the building.

"I was going across the place there to nail the beam down. It had been put there by one of the carpenters. There was nothing wrong with the beam that I know of. It was good daylight. I noticed Mr. Fore at work on the scaffold; he could see me, but I went ahead with my work and never observed what other men were doing."

Plaintiff alleges in his complaint that he was injured by the negligence of defendants, his employers, in that they failed to exercise due care to provide for him a reasonably safe place to work. He contends that the place at which he was directed to work by his foreman was unsafe, because, at the time he was directed to go there, and while he was at work, carpenters, employed by defendants, were engaged in fastening down metal beams, which they had placed in the construction of the ceiling of the room in which plaintiff was at work; that these carpenters were permitted to continue and did continue to work on said beams while plaintiff

was at work beneath them; that these beams were not securely fastened, and that one of them turned and fell upon him, thus injuring him. De- fendant's foreman, under whose direction and supervision he was re- quired to work, was present and knew the conditions under which plain- tiff was working, when he was injured. There is no allegation or conten- tion by plaintiff that the beam fell upon him because of any negligence of the carpenters, or because the method by which they were doing their work was unsafe or dangerous. He contends that the proximate cause of his injury was the negligence of defendants consisting in their failure to perform their duty to him, as their employee, to wit, to exercise due care to provide for him, while at work, a reasonably safe place.

The court was of opinion that the evidence offered by plaintiff was not sufficient to sustain his allegations or to support his contentions, and therefore allowed defendants' motion, made at the close of plaintiff's evidence for judgment as in case of nonsuit. C. S., 567. In this, plain- tiff contends that there was error. His only assignment of error, upon his appeal to this Court, presents this contention.

The fact that plaintiff was injured as he alleges and as the evidence shows, raises no presumption of negligence; it is not, in itself, evidence of negligence. *Orr v. Rumbough,* 172 N. C., 754. The fact that an employee has been injured, while at work, carries with it no presump- tion of negligence; it is not, in itself, evidence that the place at which he was at work, at the time of the injury, was an unsafe place in which to work, or that there had been a breach of duty by his employer to exercise due care to provide a reasonably safe place for him, resulting, as the proximate cause, in his injury. *Shaw v. Mfg. Co.,* 143 N. C., 131.

It is not contended that the mere fact that an employee has been in- jured, while at work, imposes liability upon his employer for damages resulting from his injury. This Court has consistently held that an em- ployer is not an insurer of the safety of his employee while engaged in the performance of duties within the scope of his employment. The law holds an employer liable for damages resulting from injuries to an em- ployee, only when such injury is caused by the failure of the employer to perform some duty prescribed by law and arising out of the relation- ship. It is the wise and just policy of the law as administered in this jurisdiction, to protect the mutual rights and to enforce the mutual du- ties of employer and employee, to the end that justice shall be done to each, and that neither shall suffer wrong. The relationship is and should be mutually helpful. It is a useful and, indeed, essential human rela- tionship, necessary in a complex civilization, built upon the principle of the division of labor, as is ours. *Greer v. Const. Co.,* 190 N. C., 632.

In the instant case, there was no inherent defect in the beam, which caused it to turn and fall, as was the case with the iron rail in *Pigford*

*v. R. R.,* 160 N. C., 93; the beam had not been taken from the place where it belonged and put temporarily in an insecure place, as was the case with the piece of iron in *Hairston v. Cotton Mills,* 188 N. C., 557; there was no defect in its support, or probability of its falling, upon the release of a lever, as was the case with the crane in *Davis v. Shipbuilding Co.,* 180 N. C., 74, or the dipper in *Perkins v. Wood & Coal Co.,* 189 N. C., 602; its fall was not due to the dangerous method by which fellow-employees were doing their work, under the direction and supervision of a foreman of defendant, as in *Beck v. Chair Co.,* 188 N. C., 743, or in *Thomas v. Lawrence,* 189 N. C., 521. Nor was the place at which plaintiff was directed to work rendered unsafe by the presence of a latent source of danger, which he could not detect by his senses, as in *Barnes v. Utility Co.,* 190 N. C., 382, where the employee was fatally injured by coming in contact, at the place to which he had gone for the performance of his duties, with a wire highly charged with electricity, without notice to him of such condition of the wire.

In *Brown v. Scofields Co.,* 174 N. C., 4, this Court held that plaintiff, who was injured by the falling upon him of a pair of pliers which another employee of defendants, who was working above plaintiff, had in his possession, could not recover damages resulting from said injury upon the contention that defendants had failed to exercise reasonable care to provide plaintiff a safe place at which to work. The opinion, written by *Justice Brown,* is supported by abundant citations of authorities, sustaining the proposition that the "obligation of a master to provide a reasonably safe place and structures for his servant to work upon, does not oblige him to keep a building, which they are employed in erecting, in a safe condition at every minute of their work, so far as its safety depends on the performance of that work by them and their fellow-servants." *Armour v. Habor,* 111 U. S., 313. In that case, as in the instant case, the place was safe; the injury was the result of the act of a fellow-servant, which, whether accidental or negligent, imposed no liability upon the employer who could not have, by the exercise of reasonable care, foreseen the occurrence. Cited and distinguished in *Thomas v. Lawrence,* 189 N. C., 521.

The beam, which fell and injured plaintiff, had been placed by the carpenters just as the other beams, used in the construction of the ceiling, had been placed. None of these fell. Plaintiff was directed to build up the wall so that the beams overhead could be fastened. Hemphill, one of the carpenters, who was at work fastening down the beams, by nailing wooden strips across them, in some way, which he could not explain, fell and caught at this beam; it turned and fell, with Hemphill, upon plaintiff, who was at work below. When defendants' foreman directed plaintiff to take his tools and build up the wall, so that the beams

which had been placed by the carpenters could be fastened down by them and so that the missing beam might be put in its place, he could not have foreseen that one of these carpenters would stumble and fall upon one of the beams, causing it to fall. Plaintiff, who knew the purpose for which he was directed to build up the wall and knew that the carpenters were at work over him, did not foresee that one of these beams would fall upon him. He was a stonemason with twenty-five years of experience and had been at work on this building for two months. With Hemphill, the falling of the beam was an unforeseen event, occurring without his will or design. As to the foreman, who, it is contended, was the vice-principal of plaintiff, it was an unexpected, unusual and unforeseen occurence. Plaintiff's injury was caused by an unfortunate accident, fortunately for him, resulting in no serious or permanent injury. Defendants are not liable for such damages as resulted from plaintiff's injury, upon the facts established by the evidence considered in accordance with the rule applicable, as often stated by this Court.

"The employer does not guarantee the safety of his employees. He is not bound to furnish them an absolutely safe place to work in, but is required simply to use reasonable care and prudence in providing such a place. It is culpable negligence which makes the employer liable, not a mere error of judgment. The rule which calls for the care of a prudent man is in such cases the best and safest one for adoption. It is perfectly just to the employee and not unfair to the employer and is but the outgrowth of the elementary principle that the employee, with certain statutory exceptions, assumes the ordinary risks and perils of the service in which he is engaged, but not the risk of the employer's negligence. When any injury to him results from one of the ordinary risks or perils of the service, it is the misfortune of the employee, and he must bear the loss, it being *damnum absque injuria.*" This statement of the law by *Justice Walker* in *Marks v. Cotton Mills,* 135 N. C., 288, has been repeatedly and uniformly approved by this Court, and applied to the facts in many decisions, some favorable to the employer, and some to the employee. See Anno. Ed., and Shepherd's Citations.

No man, by the exercise of reasonable care, however high and rigid the standard of such care, upon the facts in any particular case, can foresee or forestall the inevitable accidents, and contingencies which happen and occur daily, some bringing sorrow and loss, and some bringing joy and profit, all however contributing, in part, to make up the sum total of human life. The law holds men liable only for the consequences of their acts, which they can and should foresee and by reasonable care and prudence, provide for.

There was no error in allowing the motion for judgment as in case of nonsuit. The judgment is

Affirmed.