The plaintiff had a room in the defendant hotel and alleged that on 30 January, 1933, at about the hour of 9:30 p.m. she came out of her room on the third floor of said hotel with the intention of descending the stairs between the third and second floors for the purpose of going to the room of the assistant manager of said hotel, who was ill, to inquire as to his condition and to secure the teaspoons from his tray which would be needed for his early breakfast, said meal to be furnished from the coffee shop operated by this plaintiff. The plaintiff had descended within about seven steps of the second floor when the heel of her left shoe became caught and hung in the edge of a metal strip which the defendant had tacked on the outer edge of one of the steps of said stairs for the purpose of holding the carpet firmly on said stairs; that the defendant had carelessly, recklessly and negligently allowed the said metal strip to protrude upward on the step to such an extent that a person's shoe might be caught in the knife-like edge thereof; that the heel of plaintiff's left shoe caught in the edge of said metal strip so firmly that the shoe was forced off plaintiff's foot and the heel off the shoe; that the tripping . . . over the protruding edge of said metal strip caused her to lose her balance and to fall down the remaining six steps on the way to the second floor.
Plaintiff testified: "I thought the steps were all right and as I stepped down my foot caught. I grabbed and tried to release my foot and heel. The brass strip caught in my heel and as I went to release my foot my heel pulled down and caught underneath my instep. It is nothing unusual to have brass strips on the edge of steps. The brass, according to my best judgment, extended about one inch from the outer edge. I don't think there was anything unusual about the width of the steps, just like all steps going down in hotels and everywhere else. There was nothing unusual in their construction. . . . I did not have my hand on the rail then because I don't usually hold a rail as I go down, but when my foot caught I grabbed the handrailing. I stopped when I grabbed the handrailing to release my foot. Then the strip went into my heel. . . . While Mr. Robinson was sick I had used the steps that I fell on. I believe the steps are about the same in the day as the *Page 760 
night. I used them up and down. I think they are lighted as well in the day time as the night and the night as well as in the day time. I cannot say I ever noticed anything wrong with the steps on the numerous occasions I had used them . . . I had never observed anything in the world wrong with them. I had never noticed anything loose on the steps. I was rushing up to see how he was. On going back to my business . . . I went up those identical steps practically every day while Mr. Robinson was sick. I did not notice anything wrong about the steps. I did not observe anything loose."
There was evidence that the steps were "good, wide steps about 11 or 12 inches wide. There was a nice normal distance between them and were easy steps to walk on, very easy. There was a nice velvet carpet to walk on. There was a broad surface to walk on. They were kept clean and free from obstructions. They were clean at all times."
The plaintiff proposed to offer evidence to the effect that another person in the hotel had fallen on the stairway leading from the fourth to the fifth floor. This evidence was excluded by the court.
The plaintiff also proposed to show by a witness that, in November preceding the injury to plaintiff, in descending from the third to the second floor that she hung her toe "under the brass strip which tripped me, but I had my hand on the rail and held on and did not fall completely down. When I reached the office I told Mr. Pate I hung the toe of my shoe in one of the brass strips nailed along the edge of the stairway and had come very near falling." This evidence was excluded by the court and other evidence of like tenor.
At the conclusion of plaintiff's evidence a judgment of nonsuit was sustained and the plaintiff appealed.
The duty imposed upon owners or lessors of buildings to employees and invitees with respect to steps is discussed and pronounced in Farrell v.Thomas Howard Co., 204 N.C. 631; Batson v. Laundry, ante, 93, andBohannon v. Stores Co., 197 N.C. 755, 150 S.E. 356.
In order to establish a breach of duty so imposed the injured party must offer evidence tending to show (a) defective or negligent construction or maintenance; (b) express or implied notice of such defects. Blevins v.Cotton Mills, 150 N.C. 493, 64 S.E. 428; Orr v. Rumbough, 172 N.C. 754,90 S.E. 911; Craver v. Cotton Mills, 196 N.C. 330, 145 S.E. 570. The plaintiff testified that "there was nothing unusual in their construction. . . . I cannot say that I ever noticed anything wrong with the steps on the numerous occasions I had used them. I had *Page 761 
never observed anything in the world wrong with them. I had never noticed anything loose on the steps."
Applying the accepted principles of law, it appears that there was no evidence of defective construction or negligent maintenance. Consequently, the plaintiff is not entitled to recover, and the judgment of nonsuit was correct. Hence exceptions relating to the exclusion of evidence that other guests in the hotel had fallen upon steps therein became immaterial. SeeDorsett v. Mfg. Co., 131 N.C. 254, 42 S.E. 612; Conrad v. Shuford,174 N.C. 719, 94 S.E. 424; McCord v. Harrison-Wright Co., 198 N.C. 742,153 S.E. 406.
Affirmed.