## VALLIE BUMGARNER McINTYRE v. MONARCH ELEVATOR AND MACHINE COMPANY (ORIGINAL DEFENDANT), AND GILMORE CLINIC, INC. (ADDITIONAL DEFENDANT).

(Filed 16 June, 1949.)

**1.  Negligence § 4d—**

A person taking over possession of an elevator in a building for the purpose of repair is chargeable with the duty of exercising due care for the safety of those who rightfully use or attempt to use it.

**2. Negligence § 5—**

Proximate cause is that cause which produces the injury in continuous sequence without any new or intervening cause, and without which the injury would not have occurred, under circumstances from which injury is reasonably foreseeable.

**3. Same—**

While foreseeability is an essential element of proximate cause, it is not necessary that the particular injury should have been foreseen, but it is sufficient if in the exercise of ordinary care the wrongdoer could have foreseen in the light of attendant circumstances as they were known or ought to have been known by him, that some injury was likely to result from his negligence.

**4. Negligence § 19a—**

Foreseeability and proximate cause are ordinarily for the determination of the jury, and it is only when all the facts are admitted and only one inference may be drawn therefrom that the court will declare whether an act was the proximate cause of the injury.

**5. Negligence § 19b (1)—Evidence held for jury on questions of negligence and proximate cause in action for injuries in fall down elevator shaft.**

The evidence considered in the light most favorable to plaintiff tended to show that defendant elevator company was employed to repair an elevator in a medical clinic, which elevator was for the use of the public, particularly for the use of ill persons and persons with defective vision seeking medical attention, that in the course of the work the elevator was moved between the first and second floors, and the doors at the first floor left open and unguarded, that a typewritten slip with the words "elevator out of order, use stairway" was pasted over the push button at the elevator door, and that plaintiff, a pregnant woman with defective vision, entered the building and was walking down the well-lighted corridor to the elevator when she fainted, and fell through the partially opened doors into the elevator well, suffering the injuries in suit. *Held:* The evidence was sufficient to be submitted to the jury on the questions of negligence of the elevator company and proximate cause.

**6. Negligence § 19c—**

Nonsuit on the ground of contributory negligence should not be granted unless plaintiff's evidence, taken in the light most favorable to her, so clearly establishes contributory negligence that no other reasonable inference or conclusion can be drawn therefrom.

**7. Same—**

In repairing an elevator in a medical clinic, defendant elevator company left the doors at the ground floor open about 18 inches while the elevator was moved between the first and second floors. Plaintiff, a pregnant woman with defective vision, fainted and fell through the doors to her injury while attempting to visit the doctor. *Held:* Plaintiff cannot be held contributorily negligent as a matter of law even though the corridor to the elevator was well lighted and a typewritten slip stating that the elevator was out of order had been pasted over the elevator call button.

McIntyre *v.* Elevator Co.

**8. Torts § 6—**

 Judgment of nonsuit was entered against plaintiff upon motion of the original defendant, and the original defendant's cross-action against a party joined on the original defendant's motion as a joint tort-feasor was thereupon dismissed. *Held:* Upon the reversal of the judgment of nonsuit, the cross-action for contribution is reinstated, the original defendant being entitled to a day in court to establish its cross-action if it can. G.S. 1-240.

BARNHILL, J., dissenting.

WINBORNE, J., concurs in dissent.

APPEAL by plaintiff from *Edmundson, Special Judge,* February Term, 1949, of GUILFORD. Reversed.

This was an action to recover damages for a personal injury alleged to have been caused by the negligence of defendant Monarch Elevator and Machine Company, hereinafter called the Elevator Company.

It was alleged that the Elevator Company while installing certain equipment for use in a passenger elevator in the building of Gilmore Clinic, Inc., had moved the elevator to the second floor and negligently left open and unguarded the door of the elevator shaft on the first floor, and that plaintiff who had entered the building for the purpose of receiving medical attention fell into the opening and was injured. The defendant Elevator Company denied negligence on its part, pleaded contributory negligence on the part of plaintiff, and further on its motion had Gilmore Clinic, Inc., made party defendant and filed cross-action against the latter for contribution in the event plaintiff should recover against the Elevator Company. Gilmore Clinic, Inc., answered denying liability to its codefendant or the plaintiff.

At the close of plaintiff's evidence the motion of defendant Elevator Company for judgment of nonsuit was allowed, and judgment was entered dismissing plaintiff's action, and also dismissing the Elevator Company's cross-action against Gilmore Clinic, Inc.

Plaintiff excepted and appealed.

Defendant Elevator Company appealed from so much of the judgment as dismissed its cross-action against its codefendant.

*King & King for plaintiff, appellant.*

*Smith, Wharton, Sapp & Moore for defendant Gilmore Clinic, Inc.*

*R. M. Robinson for defendant Monarch Elevator and Machine Co., Inc.*

PLAINTIFF'S APPEAL.

DEVIN, J. The judgment of involuntary nonsuit entered by the court below raises the question of the sufficiency of the plaintiff's evidence to carry the case to the jury.

The evidence offered tended to show that the circumstances of the plaintiff's injury were substantially these : The defendant Elevator Company was engaged in installing certain electrical equipment for automatic operation of the elevator in the building of defendant Gilmore Clinic, Inc., in Greensboro. The elevator had previously been installed for manual operation and had been so operated for several months. The work of adding the additional wiring was being done by the Elevator Company under contract with Gilmore Clinic, Inc., for the use of the members of the medical profession associated with Gilmore Clinic and having offices in the building and for the convenience of their patients who came there for medical attention and service. On the first floor the doors to the elevator shaft were arranged to slide back on each side leaving a space 4 feet wide and measuring 7 feet from top to bottom, affording entrance to the elevator cage when in use. The elevator was located at the rear end of a corridor 6 feet wide and was 28 feet from the front door. On the occasion alleged, 25 November, 1947, about 4 p.m., the plaintiff, 24 years old, an expectant mother, entered the building for the purpose of being treated by Dr. Wood whose office was on the second floor. She had by direction of the physician visited this office twelve times. On those occasions the elevator had been operated by an employee of Gilmore Clinic, Inc. Plaintiff's vision was impaired but she could see large objects at some distance. Plaintiff testified she entered the front door and was walking down the lighted corridor toward the elevator when "without any warning whatsoever I completely blacked out and knew nothing until after being transferred to Wesley Long Hospital . . . I came to." She was picked up unconscious on the bottom of the elevator shaft, 4½ feet down. There was evidence tending to show that the employees of the Elevator Company, in order to install the equipment had opened the outer doors of the shaft on the first floor and raised the cage nearly to the second floor, so that the workman in charge could walk up the stairs and get on top of the cage to do the work on which he was engaged. This placed the bottom of the cage about 18 inches below the top of the opening, leaving 5½ feet clearance. The sliding or hatchway doors of the shaft were left open. One of defendant's employees had gone through this opening down into the pit, which was 6 feet square and unlighted, and was on a stepladder at the time plaintiff fell. The defendant Elevator Company's employee in charge of the work was on top of the cage when his assistant called him and he immediately came down and found plaintiff lying on the floor of the pit unconscious. There was no barrier or protection for the open elevator shaft. The manager of Gilmore Clinic, Inc., had pasted a narrow typewritten slip over the push button at the elevator door "elevator out of order, use stairway." All the work done before by defendant had been done with shaft door closed. At times the

Elevator Company's employees at request of the manager of Gilmore Clinic, Inc., had operated the elevator for the convenience of patrons.

The doors of the elevator shaft were left open by defendant Elevator Company's employer, but the width of the open space does not clearly appear. The only witness as to this was W. W. Dance, defendant Elevator Company's employee in charge of this work. He was offered by plaintiff. He testified, "The elevator doors were open. The hatchway doors were open. The elevator doors were open when I started up" to the second floor. On cross-examination he said, "the hatchway doors were partially open. I would say there was about 18 inches space between them. The elevator doors were open wide enough for Mr. Dillenbeck (his assistant in the pit) to come through . . . If he was to ease through he could possibly get through without disturbing the door. If he was to brush through there was a possibility he could push them wherever he wanted to." The man in the pit had only been down there a "couple of minutes" when the plaintiff fell. This man was not available as a witness at the trial.

There was no evidence as to the manner or cause of plaintiff's fall other than her statement that as she walked down the corridor she blacked out or fainted and the testimony of Mr. Dance that she was found unconscious at the bottom of the open shaft.

The plaintiff sustained serious injury from her fall; but the baby arrived in due time unharmed.

The evidence offered by plaintiff, considered in the light most favorable for her, tended to show that the defendant Elevator Company's employees, while working on the elevator cage in a building in which the elevator was in use by occupants and their invitees, left the door to the elevator shaft open without barrier or guard, and with only a narrow typewritten slip over the push button "elevator out of order." Whether under the circumstances this was a sufficient warning, and whether the defendant failed to exercise due care in the performance of a duty incumbent upon it, present questions, we think, for the determination of the jury. *Drumwright v. Theatres, Inc.,* 228 N.C. 325, 45 S.E. 2d 379; *Ross v. Drug Store,* 225 N.C. 226, 34 S.E. 2d 64; *Williams v. Stores Co., Inc.,* 209 N.C. 591, 184 S.E. 496; *Hunt v. Meyers,* 201 N.C. 636, 161 S.E. 74.

In *Jones v. Bland,* 182 N.C. 70, 108 S.E. 344, 16 A.L.R. 1383, the plaintiff in a hotel lobby approached the elevator for the purpose of using it. The elevator door was open but the carriage had been moved to an upper story. Plaintiff fell in the open shaft and was injured. There was also the fact that due to the darkness of the afternoon and color of the paint ordinary observation did not disclose the opening. This Court held that if these facts were accepted a primary case of negligence was made out carrying the case to the jury. *Stewart v. Carpet Co.,* 138 N.C.

60, 50 S.E. 562; *Womble v. Grocery Co.,* 135 N.C. 474, 47 S.E. 493; 18 Am. Jur. 546; 45 C.J. 867, 870. In *Rosenbaum v. Shoffner,* 98 Tenn. 624, recovery for injury sustained by one who stumbled and fell into an open elevator shaft was affirmed. One who has taken over control of an elevator, in use in a building, for the purpose of repair is chargeable with the duty of exercising reasonable care for the safety of those who rightfully use or attempt to use it. *Otis Elevator Co. v. Wilson,* 147 Ky. 676; *Fox v. Dallas Hotel Co.,* 240 S.W. 517.

Did the Elevator Company's conduct in this respect constitute negligence, and, if so, did plaintiff's injury proximately result therefrom? Proximate cause of an injury is generally defined as the cause which produced the injurious result complained of in continuous sequence from the original wrongful act, without any new or intervening cause, and without which it would not have occurred, and one from which one of ordinary prudence would have foreseen that some such result was likely under the circumstances as they were known or ought to have been known at the time. *Ramsbottom v. R. R.,* 138 N.C. 38, 50 S.E. 448; *Paul v. R. R.,* 170 N.C. 230, 87 S.E. 66; *Whitt v. Rand,* 187 N.C. 805, 123 S.E. 84; *Mills v. Moore,* 219 N.C. 25, 12 S.E. 2d 661; *Luttrell v. Mineral Co.,* 220 N.C. 782, 18 S.E. 2d 412; *Lee v. Upholstery Co.,* 227 N.C. 88, 40 S.E. 2d 688. One of the elements of proximate cause essential in the establishment of actionable negligence is foreseeability. *Lee v. Upholstery Co., supra; Shaw v. Barnard,* 229 N.C. 713, 51 S.E. 2d 295; *Peoples v. Fulk,* 220 N.C. 635, 18 S.E. 2d 147; *Beach v. Patton,* 208 N.C. 134, 179 S.E. 446; *Gant v. Gant,* 197 N.C. 164, 148 S.E. 34; *Harton v. Tel. Co.,* 141 N.C. 455, 54 S.E. 299. Liability in law for a negligent act is dependent upon whether the injurious consequences flowing therefrom were such as could and should have been foreseen and by reasonable care and prudence guarded against. *Osborne v. Coal Co.,* 207 N.C. 545, 177 S.E. 796. It must be made to appear that the injury was the natural and probable consequence of the negligent act and ought to have been foreseen in the light of attendant circumstances. *Fore v. Geary,* 191 N.C. 90, 131 S.E. 387; *R. R. v. Kellogg,* 94 U.S. 467. But it is not necessary that the wrongdoer should have foreseen the particular injury which resulted "provided that in the exercise of ordinary care he might have foreseen that some injury would likely follow from his negligence." *Hudson v. R. R.,* 142 N.C. 198, 55 S.E. 103; *Hall v. Rinehart,* 192 N.C. 706, 135 S.E. 790; *Cole v. R. R.,* 211 N.C. 591 (598), 191 S.E. 353; *Bechtler v. Bracken,* 218 N.C. 515 (524), 11 S.E. 2d 721. It is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his act of omission or that consequences of a generally injurious nature might have been expected. *Sawyer v. R. R.,* 145 N.C. 24, 58 S.E. 598. In *Lee v.*

MCINTYRE *v.* ELEVATOR CO.

*Upholstery Co.,* 227 N.C. 88, 40 S.E. 2d 688, cited by the defendant, the elevator was located in a manufacturing plant, for the use of employees in handling goods going out, to be loaded on trucks. It was not for the use of the public or truckers in gaining entrance into the building. 45 C.J. 867. In the instant case the elevator was a passenger elevator for the use of the public, and particularly for the use of ill persons seeking medical assistance, some with defective vision, like the plaintiff, who would be expected to approach the elevator for the purpose of entrance to the upper story. In the *Lee case* the truck on which plaintiff was working had been loaded from the elevator and then the truck was moved away "a convenient distance." The elevator was moved up, presumably to bring down other goods. While the plaintiff was tying down the load with a rope, the rope slipped out of his hand and he staggered back four or five steps, and fell in the opening. It was there held it could not have been foreseen that plaintiff, an experienced workman, familiar with the premises, in full possession of his faculties, would lose his balance and step backward five steps into the pit. We think this case in essential features is distinguishable and is not controlled by the holding in the *Lee case.*

The defendant Elevator Company contends that the evidence that the aperture between the sections of the door of the elevator shaft was only about 18 inches wide should be regarded as showing that it could not reasonably have been foreseen that an adult person would or could fall through. But on the other hand it appears that defendant's workman had a few moments before passed through the same opening and was at work on a stepladder 4½ feet below the first floor level. Whether he took the stepladder with him at this time does not appear. In any event, according to plaintiff's evidence, the opening was sufficiently wide for her to pass through. Like Mercutio's wound, " 'Tis not so deep as a well, nor so wide as a church door; but 'tis enough." Romeo and Juliet, Act III.

What is the proximate cause of an injury is ordinarily a question for the jury. Rarely is the court justified in deciding this question as a matter of law. *Nichols v. Goldston,* 228 N.C. 514, 46 S.E. 2d 320. In the language of *Justice Barnhill* in *Conley v. Pearce-Young-Angel Co.,* 224 N.C. 211, 29 S.E. 2d 740, "It is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury or not. But this is rarely the case." Likewise, as stated by *Justice Seawell* in *Montgomery v. Blades,* 218 N.C. 680, 12 S.E. 2d 217, "Usually the question of foreseeability is one for the jury."

Both the building and the elevator were for the use of those needing medical service who might be expected to pass down the corridor and attempt to use the elevator which was known to be there for their con-

venience. These were circumstances within the knowledge of the defendant when it left the doors of the elevator shaft open. Whether the defendant was negligent, and, if so, whether such negligence was the proximate cause of plaintiff's injury, and whether the injury was one which in the exercise of due care defendant could and should have foreseen and by reasonable diligence guarded against, were questions for decision by the jury under appropriate instructions from the court.

Can the nonsuit be sustained on the ground of contributory negligence on the part of the plaintiff? We think not. On this point we have the plaintiff's testimony that as she walked down the corridor she suddenly and without warning fainted. Whether this was due to her condition or some inherent weakness does not appear. She fell through the open door of the elevator shaft and was injured. The burden of proof as to contributory negligence was upon the defendant Elevator Company. The rule is that nonsuit on this ground should not be granted "unless the plaintiff's evidence, taken in the light most favorable for him so clearly establishes such negligence that no other reasonable inference or conclusion can be drawn therefrom." *Dawson v. Transportation Co., ante,* 36, 51 S.E. 2d 921; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307. "It is the settled rule in this jurisdiction that judgment of nonsuit on this ground can be rendered only when a single inference, leading to that conclusion, can be drawn from the evidence." *Hampton v. Hawkins,* 219 N.C. 205, 13 S.E. 2d 227; *Atkins v. Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209; *Winfield v. Smith, ante,* 392, 53 S.E. 2d 251. We think the evidence sufficient to entitle the plaintiff to have her case submitted to the jury, and that there was error in granting the motion for judgment of nonsuit.

APPEAL OF DEFENDANT MONARCH ELEVATOR AND MACHINE CO.

The defendant Elevator Company appealed from so much of the judgment as dismissed its cross-action against Gilmore Clinic, Inc. In the judgment it was set out that the court was "of opinion that as a matter of law the motion of nonsuit by Monarch Elevator and Machine Co. having been allowed, the cross-action against Gilmore Clinic, Inc., should be dismissed," and accordingly judgment was entered dismissing this appellant's cross-action.

Without undertaking to determine on this record whether or not the defendant Elevator Company would be entitled to contribution under G.S. 1-240 from its codefendant, in the event of recovery by the plaintiff, we think the court was in error in dismissing the cross-action at this stage of the litigation. The judgment of nonsuit having now been held to have been improperly allowed, the judgment below should not be held to prevent defendant Elevator Company from having its day in court

on its cross-action to establish liability of Gilmore Clinic, Inc., as joint tort-feasor, if it can. Whether appellant can succeed in its cross-action in the event of ultimate recovery by the plaintiff is another matter.

The parties are entitled to proceed in the cause as if the motion for nonsuit by defendant Elevator Company had been originally denied. See *Pascal v. Transit Co.,* 229 N.C. 435 (442), 50 S.E. 2d 534; *Smith v. Kappas,* 218 N.C. 758, 12 S.E. 2d 693. *Bourne v. R. R.,* 224 N.C. 444, 31 S.E. 2d 382, related to the effect of a nonsuit on defendant's counter-claim.

On plaintiff's appeal: Reversed.

On defendant Elevator Company's appeal: Reversed.

BARNHILL, J., dissenting: Plaintiff does not sue or pray relief against Gilmore Clinic, Inc. Strictly speaking, it is not a defendant but a respondent, brought in to answer the claim of the defendant for contribution in the event plaintiff shall recover on her cause of action. The Machine Company is the one and only defendant and will be so treated.

Defendant installed a manually operated elevator in the Gilmore Clinic Building and agreed to return later and convert it into an automatic or push button type. At the time of the accident described in the complaint, its employees were engaged in making the conversion.

The elevator well extended about four and one-half feet below the level of the first or ground floor. The work required one of the employees to get into this well to adjust or attach some wiring. It was necessary for him to provide a means of exit. This was done by leaving the doors ajar, furnishing an open space of about eighteen inches. The elevator was between the first and second floors, leaving about five and one-half feet clearance on the first floor. A sign was placed on or near the elevator car push button, giving warning that the elevator was not in use. The hall or passageway was well lighted. Plaintiff, apparently in perfectly normal condition, except that she was pregnant and her eyesight was impaired, entered the well-lighted first floor hallway, "blacked out," and, while in that condition, walked some distance to the back of the hall where the elevator was located, and in some unexplained manner fell in the elevator shaft. She seeks now to hold the defendant liable for the resulting injuries.

The defendant's employees were engaged in doing lawful work in a lawful manner. That the doors of the elevator shaft were left partly open to provide an exit for the workmen, being a necessary incident of the work, could not constitute negligence. However, the work was being done where people were accustomed to come and go. Therefore, it was the duty of the defendant to give such warning as would put a reasonably prudent person, exercising ordinary care for his own safety, on notice

of the danger, even though it was necessary to leave the elevator shaft doors partly open to furnish an exit for the workman in the elevator pit. This I concede. But it is not the province of the Court to prescribe the type of warning which should have been provided. We do not prescribe the size of the danger flag. *Murray v. R. R.*, 218 N.C. 392. We merely determine whether the method of warning adopted by defendant evidences a want of due care sufficient to require the submission of the question to the jury. The court below answered in the negative. The ruling is presumed to be correct. The plaintiff must show error.

Here the partly lowered elevator, the partially closed doors, and the notice on the elevator bell each gave notice that the elevator was not at the first floor elevator entrance to receive passengers. In combination they were amply sufficient to give notice to any person of ordinary prudence. This was the kind or type of notice defendant was required to give. Had it draped the elevator in red warning flags, these would not have served to give plaintiff notice. Had it placed a sawhorse or similar barrier in front of the opening, this, in all probability, would have increased the danger to plaintiff by causing her to pitch head foremost into the pit.

Indeed, we have said there is no duty to warn when the danger is obvious. *Deaton v. Elon College,* 226 N.C. 433. When the lighting is such that the condition can be discovered in the exercise of ordinary care, the failure to warn imposes no liability. *Benton v. Building Co.,* 223 N.C. 809.

In this connection we must remember that plaintiff was not the defendant's invitee. The Gilmore Clinic, Inc., had invited her to enter, but the only invitation defendant had extended was an invitation to stay away from the elevator.

To entitle one to rely upon an implied invitation to enter, his purpose must be of interest or advantage to the invitor. *Pafford v. Construction Co.,* 217 N.C. 730, and cases cited. In the *Pafford case* we draw the distinction between the owner of the building who extends the invitation to enter therein and the construction company working thereon.

The fact alone that the plaintiff, on account of her temporary mental deficiency or incapacity, was unable to exercise ordinary care for her own safety did not charge defendant with the duty to exercise increased care. *Worthington v. Mencer,* 11 So. 70, 17 L.R.A. 407. In the absence of knowledge thereof, defendant was not bound to take notice of plaintiff's infirmity. *Daily v. R. R.,* 106 N.C. 301; *Doggett v. Chicago, B. & Q. Ry. Co.,* 112 N.W. 171; *Carter v. Nunda,* 66 N.Y.S. 1059; *Yeager v. Spirit Lake,* 88 N.W. 1095; *Hill v. Glenwood,* 100 N.W. 522.

The law does not impose upon one the duty of giving to another the care due only to the deaf, blind, and unconscious until he has notice that such person is suffering from one of those disabilities. One is not charge-

able with the negligence for not guarding against a danger of which he has no knowledge. Anno., 69 L.R.A. 536; Anno., Ann. Cas. 1912 C 1072.

"When the mere negligence of another causes or contributes to the injury of a person who is mentally incompetent to such a degree, if the conduct of the injured person would have amounted to such contributory negligence as would have avoided his claim to relief if he had been capable of exercising care in his own behalf, the person inflicting the injury is not to be held to a liability which would not have been incurred under the same circumstances in favor of a person of ordinary capacity, unless he had notice of the injured person's mental deficiency, and of his consequent helplessness and peril in the circumstances in which he was placed. The duty of observing special precautions for the safety of another, because the latter, by reason of mental imbecility, cannot be influenced by the dictates of ordinary prudence, is not cast upon one who is not charged with notice of the other's peril, and of his lack of sufficient intelligence to avoid it. When it is sought, in behalf of an adult, to avoid the consequences of his own conduct, and to charge another with liability for a result to which such conduct contributed, the burden is upon him to show that he was not responsible for his own acts, and that the person sought to be charged was under the duty of dealing with him as one incompetent to care for himself." *Worthington v. Mencer, supra.*

Applying these principles of law to the facts appearing of record, I am led to the conclusion that the plaintiff has failed to make out a case of negligence. But concede negligence. This alone is not sufficient to impose liability.

Proof that an accident is a natural consequence of negligence is not enough to establish the negligence as the proximate cause of the accident. *Smith v. Whitley,* 223 N.C. 534; 38 A.J. 708. Negligence does not create liability unless it is the proximate cause of the injury, and foreseeability is an essential element of proximate cause. *Wood v. Telephone Co.,* 228 N.C. 605; *Lee v. Upholstery Co.,* 227 N.C. 88; *Boyette v. R. R.,* 227 N.C. 406; *Shaw v. Barnard,* 229 N.C. 713; *Watkins v. Furnishing Co.,* 224 N.C. 674; *Tyson v. Ford,* 228 N.C. 778; *Murray v. R. R., supra;* *Mills v. Moore,* 219 N.C. 25; *Luttrell v. Mineral Co.,* 220 N.C. 782; *Bechtler v. Bracken,* 218 N.C. 515; *Ellis v. Refining Co.,* 214 N.C. 388; *Fore v. Geary,* 191 N.C. 90; *Harton v. Tel. Co.,* 141 N.C. 455.

A defendant is not required to foresee or anticipate "whatsoever shall come to pass," *Beach v. Patton,* 208 N.C. 134, or to stretch foresight into omniscience. *Wood v. Telephone Co., supra; Gant v. Gant,* 197 N.C. 164; *Montgomery v. Blades,* 222 N.C. 463. A person is bound to foresee only those consequences that may naturally and proximately flow from his negligence. If the injury complained of was not reasonably foreseeable in the exercise of due care, no liability is created. *Wood v. Tele-*

*phone Co., supra; Gant v. Gant, supra; Lee v. Upholstery Co., supra; Rattley v. Powell,* 223 N.C. 134; *Osborne v. Coal Co.,* 207 N.C. 545; *Watkins v. Furnishing Co., supra; Butner v. Spease,* 217 N.C. 82; *Brady v. R. R.,* 222 N.C. 367.

As stated by *Stacy, C. J.,* in *Tyson v. Ford, supra:* "The test of liability for negligence . . . is the departure from the normal conduct of the reasonably prudent man, or the care and prevision which a reasonably prudent person would employ in the circumstances."

"One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as is sometimes said, is only remotely and slightly probable . . . One is not charged with foreseeing that which could not be expected to happen." *Brady v. R. R., supra; Hiatt v. Rilter,* 223 N.C. 262; *Fore v. Geary, supra.* The injury must be one which the author of the primary negligence could have reasonably foreseen and expected. *Shaw v. Barnard, supra; Harton v. Tel. Co., supra.* The law holds men liable only for the consequences of their actions which they can and should foresee and by reasonable care or prudence provide against. When the negligent condition created by the defendant is merely a circumstance of the accident and not its proximate cause, no liability is imposed. *Lee v. Upholstery Co., supra.*

In my opinion the conclusion that the fact plaintiff "blacked out" and wandered down a well-lighted hall, into the elevator well was reasonably foreseeable in the exercise of due care, is not sustained by the record. To hold the defendant liable for the resulting injury is to eliminate foreseeability as an element of proximate cause, require omniscience on the part of the defendant, and make it liable "for casualties which, though possible, were wholly improbable." *Brady v. R. R., supra.*

Defendant knew doctors maintained offices in the Gilmore Building, and that their patients entered the building and used the elevator. There is no evidence that it knew or had reason to know that the lame, the halt, and the blind entered alone and unattended. To hold that it should have guarded against plaintiff's "black out" and the resulting danger to her safety is to say that it should have foreseen a condition plaintiff herself did not anticipate or guard against.

*Jones v. Bland,* 182 N.C. 70, cited and relied on in the majority opinion, is in my opinion clearly distinguishable. The defendant there was clearly negligent. He was the proprietor of the hotel. His employee removed the elevator and left the elevator shaft open and unprotected. Sufficient light to enable plaintiff, his invitee, to observe the absence of the elevator was not provided. None of these circumstances exist here.

In principle, *Lee v. Upholstery Co., supra,* is more nearly in point. There the plaintiff was an invitee; the defendant was the invitor. It removed the elevator and left the elevator shaft open while its invitee was nearby, working within a few feet thereof. It gave no notice whatever of the dangerous condition thus created, although it was under the duty to keep its premises in a reasonably safe condition for the use of its invitees. The rope plaintiff was using to tie furniture on his truck slipped and he stumbled backward into the elevator well. The factual distinctions between that case and this certainly are not favorable to this plaintiff. Yet the type of injury there disclosed was not reasonably foreseeable. So we held. Here, however, the defendant ought to have foreseen plaintiff would "black out" and while unconscious squeeze through the narrow opening between the elevator doors and fall into the elevator pit. So the majority concludes. I am unable to follow the logic of that conclusion.

Plaintiff's accident was most unfortunate. On this record the resulting injuries were due to no fault of her own. But this is no cause for shifting the burden to the defendant. It but emphasizes the soundness of the truism "hard cases make bad law" which we should ever keep in mind.

In *Griggs v. Sears, Roebuck & Co.,* 218 N.C. 166, we said: "The Court is reluctant to advance the standard of due care to such an unreasonable length as would practically put every accident in the category of actionable negligence." I fear that the majority have now overcome the reluctance there expressed. In any event, I cannot concur in the majority opinion. Instead I vote to affirm.

WINBORNE, J., concurs in dissent.