This is an action brought by the plaintiff, administrator of the estate of Cynthia Bechtler, against the defendants as joint tort-feasors for killing his child, the intestate, a young girl about four years of age. The defendants denied negligence.
C. M. Sloop, witness for plaintiff, testified, in part: "I live at 132 Bruns Avenue and have lived in Charlotte about 23 years. On September 2, 1939, Mr. James Bechtler and I were working for Southeastern Magnesia and Asbestos Company. On September 2, 1939, I was driving my automobile from Durham to Charlotte when we had a wreck seven miles south of Lexington on the way to Salisbury. The wreck occurred about 3:30 in the afternoon. In my automobile were Horace Shue, sitting on the front seat with me, and Mr. and Mrs. Bechtler and their daughter, Cynthia Bechtler, sitting in the back seat. The highway runs in a general north and south direction. I was going south towards Charlotte. The wreck occurred just south of the bridge. North of the *Page 517 
bridge the road is straight for approximately 900 to 1,000 feet with a slight down-grade to the bridge; the bridge is approximately 150 feet long; south of the bridge there is about a 400-foot straightway, then a curve to the left or east, going south; on the south the grade up from the bridge is a little steeper than on the north. The highway is a hard surface of tar and gravel construction, approximately 18 feet wide with shoulders on each side from 5 to 6 feet wide. The width of the bridge is the same as the hard surface, 18 feet. As I approached the bridge from the north I saw the truck of Gibson Ice Cream Company on the south side moving in a north direction coming toward me. There were some few cars behind it; I did not pay particular attention to just how many. I entered the bridge at approximately 30 to 35 miles an hour. There was no traffic ahead of me on my side of the road nor was there any vehicle between me and the truck on its side. As I entered the bridge on the north end the truck was about 150 feet from the southern end. As I left the southern end of the bridge the truck was within 4 or 5 feet of the bridge on my left or its right side. The truck was approximately 80 inches wide, from 12 to 15 feet long and about 7 feet high. The body of the truck was of solid construction, the cab was just like an ordinary truck cab inside the edge of the body. The driver sat in the cab and just back of his head was the cab part of the truck. I do not know whether there was glass in the back of the cab or not, but he couldn't see through it; it was an ice cream refrigeration truck. I passed a part of the truck; it was stopped or practically stopped, I did not see which. I did not see the driver give any signal indicating that he was going to stop prior to the time I got to the position where the truck was. The front of my automobile was about 4 feet past the rear of the truck at the time it was struck. At the time my automobile was struck every part of my automobile was to my right of the center of the highway. My right front wheel was off the pavement on the right-hand dirt shoulder. Just before I got to the back of the truck, Mr. Bracken's car came right over toward my car, and I tried to miss him. Just as the Bracken car came out from behind the truck I cut to the right to try to keep him from running into me, and he struck the left front wheel and did most of the damage to the door and the rear part of my car, and that threw me over the embankment. When the collision occurred the part of my car nearest the center line was a good 2 1/2 to 3 feet right of the center and the left front wheel of the Bracken car was over to the left of his center of the road at least 2 1/2 to 3 feet. On my right immediately adjoining the road on the west side was an embankment. When the Bracken car ran into my car and my car was thrown down this embankment. After I got out of my car I came back up on the highway. The Bracken car was still right where the two cars hit, over on *Page 518 
my center of the road about 3 feet; he had not moved it. It was a 6- or 7-foot embankment, but my car did not turn over. It was a coach with one door on each side. The left door was damaged to the extent that it would not stay closed, and flopped around. Cynthia Bechtler, who was with her parents in the rear seat of the car, was thrown out of the car when it went down the embankment and the door sprang open. I was the first one to get to the child. It was within 3 or 4 feet of the car on the left side of the car lying on some rock on the ground. I picked the child up and handed her to her father and told him to take her to the hospital. I think she was dead. . . . There were some few cars behind the truck, but I naturally noticed the truck, it being the bigger. When the front of my car was approximately 4 feet behind the truck the Bracken car came out from behind the truck onto my side of the road and hit my car. It happened so quick I did not pay any attention to whether he skidded or not and I did not hear any brakes. I couldn't judge his speed, but I imagine a very slow rate of speed. The Bracken car did not stop in its tracks but struck the front of my car, plowed into the side of it, and did most of the damage to the back of the car. He never got upon the bridge. I did not see the driver of the truck make any signal. There is a slight grade on each side of the bridge. The pavement was dry, of asphalt construction. . . . I had very little opportunity to put on my brakes. It was so sudden out from behind the truck, right in my face, and brakes were useless."
J. L. Evans, witness for plaintiff, testified, in part: "(Mr. Robinson: Now, if your Honor please, we want to introduce some declarations or statements made by Mr. Bracken. We concede that it would not be competent against the Ice Cream Company. — The Court: No, it would not be competent against the other defendant.) I talked to Mr. Bracken. He said he passed the ice cream truck about 3 miles down the highway, then came up the highway about 2 miles and the truck passed him, this being about a mile from the bridge where the wreck happened. Mr. Bracken said that he followed behind the truck for the last mile; that the truck got to the bridge and stopped in front of him; that he was too close to the truck, and rather than hit the back of the truck that he, Bracken, pulled out to the left to take a chance to pass."
Mrs. B. Marvin Bracken, witness for plaintiff, testified, in part: "I live at 616 North Church Street, Charlotte, and I am the wife of Marvin Bracken, one of the defendants. On September 2, 1939, I was in the automobile with my husband setting on his right on the front seat. We were proceeding north. I first observed the ice cream truck when it passed our car about 2 miles south of North Potts Creek. We trailed the truck for that distance to the bridge, and I was conscious of it in front of me part of the way. I do not recall any vehicle between us and *Page 519 
the truck. There is a curve just before you reach the bridge. We made this curve, and I was conscious that the ice cream truck was a little distance ahead of us. It was a white truck. When we were about 25 feet from the south of the bridge the truck stopped. I saw it stop. It stopped suddenly, very quickly, I was sitting on the right and did not see any signal. . . . When Mr. Bracken jerked our car out we were about 30 to 35 feet back of the truck. The truck stopped quick but I did not see it skid down the road a piece. I did not see him applying his brakes. When I saw the truck stopped we were about 30 or 35 feet behind it. When my husband put on the brakes we kept going, but our speed was less. We did not pass the back end of the truck but came to a stop with our left front axle resting on the ground about a foot across the center line."
James A. Bechtler, plaintiff, administrator, testified, in part: "I was in the automobile driven by Mr. Sloop on September 2, 1939. Mr. Sloop, Mr. Shue and I were working on the new American Tobacco Company building in Durham and were returning to Charlotte for Labor Day. I was sitting on the right-hand side of the rear seat with my wife and baby girl, who was 4 years and 2 months old. As we were driving south and left the south end of the bridge the ice cream truck was about 3 to 5 feet from the south end. It had stopped or was practically stopped. I did not see the driver of the truck put his hand out the side of the truck or give any other signal that he was going to stop. The collision between the left front wheels of the two cars occurred about 4 feet back of the truck. The end of the truck was about the center of our car. At the time of the collision the Sloop car was as far to the right as we could get. The left front side of the Sloop car was struck by Bracken's left front side. To the right of our car at the south end of the bridge was a shoulder and then a slope between 5 and 8 feet high. Mr. Sloop picked up my baby; I got out on the right side of the car and did not see where she was lying. I went around the car and said `Give her to me.' I thought she was living but she wasn't breathing, it was just the blood gushing out of her nose. She had never been sick a day in her life except for whooping cough. She was extra bright and was my only child."
On the trial in the court below, the defendant Bracken introduced evidence which we do not now consider, as he was granted a new trial. The defendant Gibson Ice Cream Company introduced no evidence.
The issues submitted to the jury, and their answers thereto, were as follows:
"1. Was the plaintiff's intestate injured and killed by the negligence of the defendant B. Marvin Bracken, as alleged in the complaint? Ans.: `Yes.' *Page 520 
"2. Was the plaintiff's intestate injured and killed by the negligence of the defendant Gibson Ice Cream Company, as alleged in the complaint? Ans.: `No.'
"3. What damage, if any, is the plaintiff entitled to recover? Ans.: `$5,000.00.'"
Upon the coming in of the verdict, plaintiff moved to set aside the verdict upon the second issue. The motion was denied, and the plaintiff excepted. Upon the coming in of the verdict, the defendant B. Marvin Bracken moved to set aside the verdict upon the first and third issues. The court having denied the plaintiff's motion as to the second issue, the plaintiff conceded that there was an error in the charge as to the measure of damages and consequently agreed that the answer to the third issue might be set aside; the plaintiff being of the opinion that it would be unfair to the defendant Bracken to set aside the verdict as to damages and leave standing the verdict on the first issue, conceded that the answer to the first issue might be also set aside. The answers to the first and third issues were thereupon by consent of the plaintiff set aside.
The judgment is as follows: "This cause coming on to be heard before his Honor, Henry A. Grady, and a jury, at the Extra May 13th Civil Term, 1940, and the jury having answered the issues as appear in the Record, and the answer to the first and third issues having been set aside, as appears in the record: Now, therefore, it is hereby Considered, Ordered and Adjudged that the plaintiff recover nothing of the defendant Gibson Ice Cream Company, Inc., and the cause is retained for trial as to the defendant B. Marvin Bracken. This the 5th day of May, 1940. Henry A. Grady, Judge Presiding."
To the signing of the foregoing judgment in favor of defendant Gibson Ice Cream Company, the plaintiff excepted, assigned error and appealed to the Supreme Court.
The defendant B. Marvin Bracken is out of the picture. He does not appeal, as he was granted a new trial in the court below.
The plaintiff excepted and assigned error to the following portion of the charge of the court below: "Whether or not the driver of the truck was guilty of a violation of the law of the State, to my mind, makes no difference in this case; and so I am not going to discuss with you whether or not he did violate the law in stopping the truck at the point indicated by the witness, because, gentlemen, the stopping of the truck had nothing to do with the collision. In other words, if it hadn't been for the *Page 521 
intervention of Mr. Bracken, in coming in as he did, the truck itself would not have struck the oncoming car driven by Mr. Sloop and would not have caused any injury to the child. The fact that the operator of the truck was guilty of negligence, . . . if he was guilty at all, it is what we call `insulated' negligence, `harmless' negligence — it did no harm to anybody; and the sole proximate cause of the injury so far as the defendants are concerned was the negligent conduct of the defendant Bracken. I am, therefore, directing you gentlemen to answer the second issue `No.' (Again reading the second issue): `Was the plaintiff's intestate injured and killed by the negligence of the defendant Gibson Ice Cream Company, as alleged in the complaint?' I direct you to answer that `No,' because the burden is upon the plaintiff to satisfy you, by the greater weight of the evidence, that the driver of the truck was guilty of some act of negligence which was at least one of the proximate causes of the little girl's death; and the plaintiff has not done so, as I understand the law; and, therefore, it is your duty to answer that issue `No.'"
It appears from the record that the only question for this Court to determine is whether, on the evidence of plaintiff, the matter should have been left to the jury as to the negligence of the defendant Gibson Ice Cream Company. We think so. The often repeated rule is that the evidence which makes for plaintiff's claim, or tends to support his cause of action, is to be taken in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.
The defendants were sued as joint tort-feasors. In 5 Amer. Jurisprudence, part sec. 345, at pp. 687-8, it is written: "The rule that where two or more tort-feasors by concurrent acts of negligence which, though disconnected, in combination inflict an injury, all are jointly liable. . . . But the parties may be sued jointly, although the degree of care which each owed the person injured was different. They may be sued jointly notwithstanding there may exist a difference in the degree of liability or the quantum of evidence necessary to establish such liability. So, too, the fact that one was wanton and reckless and the other simply manifested want of ordinary caution does not prevent joint liability."
In Harton v. Telephone Co., 141 N.C. 455 (461), it is said: "There may be more than one proximate cause of an injury, and it is well established that when a claimant is himself free from blame and a defendant sued is responsible for one such cause of injury to plaintiff, the action will be sustained though there may be other proximate causes concurring and contributing to the injury. In 21 Am. Eng. Enc. (2 Ed), 495, it is said: `To show that other causes concurred in producing or contributing to the result complained of is no defense to an action *Page 522 
of negligence. There is indeed no rule better settled in this present connection than that the defendant's negligence, in order to render him liable, need not be the sole cause of plaintiff's injuries.' Again, on p. 496, it is said: `When two efficient proximate causes contribute to an injury, if defendant's negligent act brought about one of such causes, he is liable.'" The above is approved in Harvell v. Lumber Co., 154 N.C. 262, and quoted with approval in Wood v. Public-Service Corp., 174 N.C. 697
(699-700). White v. Realty Co., 182 N.C. 536 (537-8); York v. York,212 N.C. 695 (703).
In Lewis v. Hunter, 212 N.C. 504 (507), we find: "The contention of the appellant that the negligence of the defendant Spear insulated any negligence on his part, and was the sole proximate cause of the intestate's death cannot be sustained, since the evidence tends to show that the death of the intestate was the result of the joint and concurrent negligence of the defendants Hunter and Spear. West v. Baking Co., 208 N.C. 526, and cases there cited."
C. M. Sloop was the driver of the car in which the child was killed. She was on the back seat with her father and mother. Sloop's testimony was to the effect that he was driving about 30 to 35 miles an hour when he crossed the bridge, no traffic ahead of him, and he was on his side of the road. When his car was struck by that driven by defendant Bracken "every part of my automobile was on the right of the center of the highway."
Mrs. Bracken testified, in part: "There is a curve just before you reach the bridge. We made this curve, and I was conscious that the ice cream truck was a little distance ahead of us. It was a white truck. When we were about 35 feet from the south edge of the bridge the truck stopped. I saw it stop. It stopped suddenly, very quickly. I was sitting on the right and did not see any signal. . . . When I saw the truck stopped we were about 30 to 35 feet behind it."
James A. Bechtler testified, in part: "As we were driving south and left the south end of the bridge the ice cream truck was about 3 to 5 feet from the south end. It had stopped or was practically stopped. I did not see the driver of the truck put his hand out the side of the truck or give any other signal that he was going to stop. . . . At the time of the collision the Sloop car was as far to the right as we could get. The left front side of the Sloop car was struck by Bracken's left front side."
We are only considering the negligence as to the defendant Gibson Ice Cream Company. It is contended by plaintiff that, on the evidence, the defendant Gibson Ice Cream Company, through its driver and agent, violated the following rules of the road: (1) N.C. Code, 1939 (Michie), sec. 2621 (287) — Reckless Driving; (2) sec. 2621 (275) — Mirrors — "No *Page 523 
person shall drive a motor vehicle on a highway which motor vehicle is so constructed or loaded as to prevent the driver from obtaining a view of the highway to the rear by looking backward from the driver's position, unless such vehicle is equipped with a mirror so located as to reflect to the driver a view of the highway for a distance of at least two hundred feet to the rear of such vehicle, of a type to be approved by the commissioner." (3) Sec. 2621 (301) — Signals on starting, stopping or turning — "(a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement. (b) The signal herein required shall be given by means of the hand and arm in the manner herein specified, `or by any approved mechanical electrical signal device, except that when a vehicle is so constructed or loaded as to prevent the hand and arm signal from being visible, both to the front and rear, the signal shall be given by a device of a type which has been approved by the department.' Whenever the signal is given the driver shall indicate his intention to start, stop, or turn by extending the hand and arm from and beyond the left side of the vehicle as hereinafter set forth. Left turn — hand and arm horizontal, forefinger pointing. Right turn — hand and arm pointed upward. Stop — hand and arm pointed downward. All signals to be given from left side of vehicle during last fifty feet traveled." One driving an automobile upon a public highway is required by provision of this section to give specific signals before stopping or turning thereon, and the failure of one so driving to give the signal required by statute is negligence, and when the proximate cause of injury, damages may be recovered therefor by the one injured. Murphy v. Coach Co., 200 N.C. 92, 93; Stovall v. Ragland,211 N.C. 536, 539; Smith v. Coach Co., 214 N.C. 314; Mason v.Johnston, 215 N.C. 95; Newbern v. Leary, 215 N.C. 134.
In Holland v. Strader, 216 N.C. 436, Devin, J., for the Court, said: "Evidence that defendant stopped his car suddenly without giving the warning signal required by statute, and that the car in which plaintiff was riding as a guest, traveling on the highway in the same direction behind defendant's car, collided with the rear of defendant's car, causing the injury in suit, is held sufficient to be submitted to the jury on the issue of defendant's negligence, notwithstanding defendant's evidence that the cars were in a long line of traffic going to a football game and that the negligence of the driver of the car in which plaintiff was riding in failing to keep a proper lookout and control over the car, and in *Page 524 
following too closely behind defendant's car, was the sole proximate cause of the injury, the conflicting contentions raising a question of fact for the determination of the jury." At p. 438, it is said: "According to the uniform decisions of this Court, the violation of a statute imposing a rule of conduct in the operation of a motor vehicle and enacted in the interest of safety has been held to constitute negligence per se, but before the person claiming damages for injury sustained can be permitted to recover he must show a causal connection between the injury received and the disregard of the statutory mandate. This has been the established rule in North Carolina," citing authorities.
In DeLaney v. Henderson-Gilmer Co., 192 N.C. 647 (650-1), it is said: "In Lea v. Utilities Co., 175 N.C. at p. 463, the Court said: `In order to establish actionable negligence, the plaintiff is required to show by the greater weight of the testimony, first, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they were placed, proper care being that degree of care which a prudent man should use under like circumstances and charged with a like duty; and second, that such negligent breach of duty was the proximate cause of the injury, a cause that produced the result in continuous sequence and without which it could not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under the facts as they existed. Ramsbottom v. R. R., 138 N.C. 41.' In Hudson v. R. R., 176 N.C. 488
(492), Allen, J., confirming the above rule, says: `To which we adhere, with the modification contained in Drum v. Miller, 135 N.C. 204, and many other cases, that it is not required that the particular injury should be foreseen, and is sufficient if it could be reasonably anticipated that injury or harm might follow the wrongful act.' Hall v. Rinehart Dennis Co., 192 N.C. 706; Boswell v. Hosiery Mills, 191 N.C. 549; Moorev. Iron Works, 183 N.C. 438."
We are here dealing with the negligence of the defendant Gibson Ice Cream Company. If the stopping of the truck by the driver of Gibson Ice Cream Company was negligent and it caused defendant Bracken to run into the Sloop car, it was for the jury to say whether it was a contributing cause to plaintiff's intestate's death. We are not analyzing the contentions as to Bracken also being a joint tort-feasor, as the question of his liability is not here on appeal. Sloop was the driver of the car. We see no evidence of any control of the car driven by Bechtler, but he and his wife and child were guests.
In Albritton v. Hill, 190 N.C. 429 (430), we find: "This and other evidence, which we need not set out in detail, . . . tended to show a breach of more than one statute. A breach of either is negligence per se;
the causal relation between the alleged negligence and the injury, *Page 525 
being, of course, a question for the jury. . . . (citing authorities). In reference to concurrent negligence we have held that where two proximate causes contribute to an injury, the defendant is liable if his negligent act brought about one of such causes. . . . (citing authorities). We have also held that negligence on the part of the driver of a car will not ordinarily be imputed to another occupant unless such other occupant is the owner of the car or has some kind of control over the driver." Gold v.Kiker, 216 N.C. 511 (517).
We think there was error in the charge of the court below and there was sufficient evidence to be submitted to the jury as to the negligence of defendant Gibson Ice Cream Company. For the reasons given, there must be a
New trial.