C. H. LEARY, ADMINISTRATOR OF C. B. COOPER, DECEASED, v. NORFOLK SOUTHERN BUS CORPORATION,
and
N. P. McDUFFIE v. NORFOLK SOUTHERN BUS CORPORATION.

(Filed 23 January, 1942.)

Automobiles §§ 14, 18h—Stopping of bus on highway to permit passenger to alight is not violation of parking statute.

> The stopping of a bus upon the paved portion of a highway, outside of a business or residential district, for the purpose of permitting a passenger to alight, is not parking or leaving the vehicle standing within the purview of sec. 123, ch. 407, Public Laws 1937, even though the shoulders of the highway at the scene are of sufficient width to permit the bus to be stopped thereon, and an instruction to the effect that stopping the bus on the highway for such purpose is a violation of this statute, constituting negligence *per se*, must be held for reversible error when the matter relates to one of plaintiff's primary allegations of negligence.

DEVIN and SEAWELL, JJ., dissent.

CLARKSON, J., dissenting.

APPEAL by defendant from *Stevens, J.,* at April Term, 1941, of TYRRELL. New trial.

Civil action instituted by N. P. McDuffie to recover damages for personal injuries resulting from an automobile collision and civil action instituted by C. H. Leary, Administrator, for the wrongful death of his

intestate resulting from the same accident. At the time of the trial the two actions were consolidated for trial by order of the judge.

On the night of 14 October, 1938, plaintiff McDuffie and his father-in-law, C. B. Cooper, plaintiff Leary's intestate, left Columbia, North Carolina, to visit friends at Creswell. They left on the return trip about 10 p.m., entering the highway about 200 yards behind defendant's bus. McDuffie, who was driving, followed the bus for 5 or 6 miles, driving at a speed of about 40 miles per hour. Upon reaching a straight stretch of road McDuffie cut his automobile to the left for the purpose of passing the bus. He saw a car approaching from the opposite direction. Thereupon he cut his car back to the right and collided with the rear end of defendant's bus. At the time, the bus was in the act of stopping or had stopped for the purpose of permitting a passenger to alight. As a result of the collision Cooper was killed and McDuffie received certain personal injuries and his automobile was damaged.

Plaintiffs allege that the defendant was negligent in that: (1) it permitted its bus to be operated by an unskilled and incompetent driver; (2) it failed to have installed on its bus a proper rear view mirror or other like device; (3) its driver operated its bus without keeping a proper lookout or exercising due care to ascertain the proximity of automobiles approaching from the rear; (4) it failed to denote its intention to stop said bus upon said highway by giving proper hand and arm or adequate mechanical signal; and (5) it permitted its bus to be parked or left standing upon the paved or improved or main traveled portion of the highway when it was practicable to park the same off of the said portion of said highway.

When the cause came on to be tried appropriate issues were submitted to and answered by the jury in favor of the plaintiffs. From judgment thereon defendant appealed.

*S. S. Woodley and McMullan & McMullan for plaintiffs, appellees.*

*Fred E. Martin, R. Clarence Dozier, and Ehringhaus & Ehringhaus for defendant, appellant.*

BARNHILL, J. One of the primary allegations of negligence is that the defendant parked or left its bus standing upon the paved or improved or main traveled portion of the highway in violation of sec. 123 (a), ch. 407, Public Laws 1937. The evidence in respect thereto tended to show that the driver of the defendant's bus was in the act of stopping or had stopped the bus on the improved or paved portion of the highway for the purpose of permitting a passenger to alight, and that the shoulder of the road was of sufficient width to permit the driver to drive off of the hard surface before stopping. The only conflict in

the evidence in this particular was as to whether the bus had actually stopped, the evidence of the plaintiff tending to show that it had stopped, and that it did so suddenly.

On this aspect of the case the court charged as follows: "Plaintiff contends that defendant parked its bus on the paved portion of the highway where it had no scheduled stop. There is a section of the statute which covers that also, sec. 2621 (308):" It then read to the jury sec. 123 (a), ch. 407, Public Laws 1937, which is Michie's Code of 1939, sec. 2621 (308). It then stated plaintiff's contentions in respect thereto including the statement: "Plaintiffs contend that defendant parked its bus on the paved portion of the highway. That is one of the elements plaintiffs are depending upon in each of the cases as to negligence." It then stated plaintiffs' contentions on this allegation and charged further: "There is some debate as to what is meant by parking on a highway upon the paved or improved or main traveled portion of any highway outside a business district.

"If you find from the evidence and by its greater weight in this case that the defendant, through its driver, did stop its bus, all of the same being on the paved portion of the highway, and that at the same time there was space enough on the shoulder or entrance to a road right at this point that it was practicable to park in and not park on the paved portion of the highway, and that a reasonably prudent man, as I have defined that term for you, would not have stopped on the highway, that is, the paved portion, but would have pulled onto the shoulder or the part of the road adjoining the pavement, which according to plaintiff's contention was 10 or 11 feet wide, then that, under the law, would amount to negligence, as the court conceives it to be." This was followed by an instruction that "the violation of a statute designed for the safety of people (other than the section related to speed) using roads and highways of this State, the violation of such statute is negligence per se."

It clearly appears from the evidence offered and the quoted portion of the charge that the court below conceived it to be a violation of sec. 123 (a) of the 1937 Act if the defendant stopped its bus on the paved portion of the highway, under the circumstances outlined, for the purpose of permitting a passenger to alight. That is, the court held, in effect, that "park" and "leave standing" are synonymous with "stop."

The defendant's exceptive assignments of error challenging the correctness of the quoted excerpts from the charge present this question: Is the stopping of a motor vehicle upon the paved or improved or main traveled portion of a highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway, when such stopping is for the purpose of permitting a passenger to alight, a viola-

tion of section 123, ch. 407, Public Laws 1937, constituting negligence *per se?* The answer is no.

This question was discussed and decided in *Peoples v. Fulk, ante,* 635. Supplementing what was there said we may add that the temporary stopping of an automobile on the proper side of the highway for a necessary purpose is not unlawful. *S. v. Carter,* 205 N. C., 761, 172 S. E., 415; *Stallings v. Transport Co.,* 210 N. C., 201, 185 S. E., 643; 42 C. J., 614; 2 Blashfield Cyc. Auto L. & P., 332, and cases cited; *Billingsley v. McCormich Transfer Co.,* 228 N. W., 424 (N. D.); *Alexon v. Jardine,* 223 N. W., 32 (N. D.); *Dare v. Bass,* 224 Pac., 646. Accordingly, it has been held that the stopping of a service truck on the highway to hitch on to a wrecked car, *Kastler v. Toures,* 210 N. W., 415 (Wis.), or to detach a tow chain, *Henry v. Liebovitz & Sons,* 167 Atl., 304 (Pa.), reasonable backward or forward movement of a vehicle engaged in ordinary use of the highway, with allowance of time required in changing direction, *Henry v. Liebovitz & Sons, supra,* stopping momentarily to permit a person to board the vehicle, *Peoples v. Fulk, supra, American Co. of Arkansas v. Baker,* 60 S. W. (2d), 572 (Ark.), or stopping to make a delivery, where there is ample room to pass, *Delfosse v. Oil Co.,* 230 N. W., 31 (Wis.), does not constitute a violation of statutes such as the one under consideration. See also 2 Blashfield, *supra,* 332-33.

In many instances such temporary stops are required by statute (ch. 407, Public Laws 1937, sections 105, 117, 119, 120, 128, and 134) and to hold otherwise would mean that a motorist who stops at a through street or to permit a pedestrian to pass in safety or for traffic to clear before making a left-hand turn or to yield the right of way to a train at a railroad crossing or to permit a passenger to get on or to alight from the vehicle must first drive off of the hard surface on to the shoulder of the road. The language used in the statute is not such as to justify this conclusion.

The charge of the court on this aspect of the case dealt with one of the plaintiffs' primary allegations of negligence. Defendant admitted its bus was stopped with all four wheels on the pavement to permit a passenger to alight. The court instructed the jury that this was an act of negligence *per se.* Such charge was erroneous and prejudicial.

On the question of contributory negligence of plaintiff McDuffie see *McNair v. Kilmer & Co.,* 210 N. C., 65, 185 S. E., 481; *Hughes v. Luther,* 189 N. C., 841, 128 S. E., 145.

As the questions presented by the other exceptive assignments of error may not again arise we refrain from discussion thereof.

New trial.

DEVIN and SEAWELL, JJ., dissent.

LEARY v. BUS CORP. and McDUFFIE v. BUS CORP.

CLARKSON, J., dissenting: From the main opinion I dissent. I give the facts and the law in the case fully.

These are two actions brought by plaintiffs against defendant for actionable negligence, alleging damage. They were consolidated for trial without objection.

In the McDuffie case the issues and answers thereto were as follows:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Ans.: 'Yes.'

"2. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Ans.: 'No.'

"3. What property damage is plaintiff entitled to recover? Ans.: '$400.00.'

"4. What damage is plaintiff entitled to recover for and on account of injuries to his person? Ans.: '$200.00' "

In the Leary case the issues and answers thereto were:

"1. Was plaintiff's intestate injured by the negligence of the defendant, as alleged in the complaint? Ans.: 'Yes.'

"2. If so, what damage is plaintiff entitled to recover? Ans.: '$7,500.' "

I think the issues correct from the pleadings and evidence adduced on the trial. In the McDuffie case the defendant denied negligence and set up the plea of contributory negligence. In the Leary case (a guest in the car) the defendant denied negligence and set up the plea of "joint adventure" and contributory negligence. There was no evidence to support the plea in the Leary case, and, therefore, no issues as to "joint adventure" or contributory negligence on these aspects were submitted to the jury.

In the Leary case the allegations in the complaint as to negligence are as follows: "That as plaintiff is informed, believes and avers, the death of his intestate, C. B. Cooper, was proximately caused by the negligence of the defendant, acting by and through its agent, servant or employee, viz.: the driver of said bus, in that the defendant, notwithstanding that at the time it well knew, or in the exercise of ordinary care ought to have known, that the width of the paved, improved or main traveled highway leading from Creswell to Columbia, and particularly that portion thereof at the point of said impact, was only 16 feet, that the shoulders at said point were in good condition and sufficiently wide to enable said bus to park or remain standing thereon, and that the car in which plaintiff's intestate was riding was at the time proceeding in the same direction closely in the rear of said bus, did nevertheless: (1) wrongfully, carelessly and negligently permit said bus at said time to be operated by an unskilled and incompetent driver; (2) wrongfully, carelessly and negligently operate said bus without having attached thereto a properly

adjusted rear view mirror, or other like device, in good condition; (3) wrongfully, carelessly and negligently operate said bus without keeping a proper lookout, or exercising due care to ascertain the proximity of automobiles approaching from the rear; (4) wrongfully, carelessly and negligently fail to denote its intention to stop said bus upon said highway at or near said point, either by hand or arm signal, or by any approved mechanical or electrical device, or otherwise; (5) wrongfully, carelessly and negligently park said bus or leave same standing upon the paved or improved or main traveled portion of said highway, outside of a business or residence district, and at a point where it had no schedule stop, notwithstanding that, as the defendant well knew or should have known in the exercise of ordinary care, it was practicable to park said bus or leave same standing off of the paved, improved or main traveled portion of said highway, and notwithstanding further, as the said defendant well knew, or should have known in the exercise of ordinary care, that, when said bus was so parked or left standing, a clear and unobstructed width of only about 8 feet or less upon the paved, improved or main traveled portion of said highway, opposite such parked or standing bus, was left for the free passage of other vehicles thereon." That the prayer for damages is set forth. These allegations in the complaint are denied by the defendant and the pleas of "joint adventure" and contributory negligence are set up.

In the McDuffie case the allegations in the complaint as to negligence are as follows: "That plaintiff's injuries to property and person were proximately caused by the negligence of the defendant, acting by and through its agent, servant and employee, viz.:" and contain the same allegations as in the Leary case. These allegations are denied by defendant and the plea of contributory negligence is set up.

*Evidence of Plaintiff:* The plaintiff N. P. McDuffie testified, in part: "My wife gave birth to a child on the 12th. As I recall the 15th day of October, 1938, it was a Saturday. I was staying in Columbia with my father-in-law, C. B. Cooper, who lived there. My car was a 1938 Ford Coach, and I left Columbia at approximately 8 p.m., for the purpose of visiting some friends in Creswell. . . . My father-in-law, Mr. Cooper, went with me in the car. I invited him to go on the trip. He had no interest in the car. It was my car and Mr. Cooper had no business in Creswell. We reached Creswell about 8:00, maybe 8:20, we left shortly after 8:00. I saw my friends and stayed in Creswell something over an hour. At that time I was out on the street talking to my friends. I pulled out in my car about 200 yards behind the bus. We were both going toward Columbia and I was driving behind the bus. When I reached the main highway I pulled up to approximately 100 yards behind the bus and trailed at that approximate distance between

5 and 6 miles. There is a long curve coming from Creswell to Columbia, and I trailed the bus at an approximate distance of 100 yards until we had passed the curve. I was running around 40 miles an hour. After passing the curve we came into a straight-away which is approximately 2 or 3 miles long. After entering the straight-away I attempted to pass the bus. In order to pass I pulled up behind the bus and blew my horn and started by and noticed car lights ahead and pulled back. I didn't see the car lights until I turned out to my left because before then the bus cut off the view. The bus was quite a lot wider than my car. While I was following the bus I was driving on my right side within 4 or 5 or 6 inches of the outer edge of the pavement. When I pulled out to the left and saw a car coming it was approximately 300 yards from me. I couldn't tell accurately. I turned back because I was meeting this car and didn't figure I had time to pass. I thought it was dangerous to be passing the bus. I pulled my car again to the right-hand side behind the bus and was approximately 20 or 25 yards therefrom. I saw the pavement between me and the bus. I had slowed down when I pulled back. Of course, to pass I had speeded up a little bit but had slowed down to approximately 40 miles an hour. I intended to pull back to the left, but did not have time before that bus stopped right in front of me and I plunged right into it. It stopped suddenly. I applied my brakes to the extent that they had to be unlocked. They were jammed. There was nothing else I could do to avoid the bus after it stopped suddenly. I didn't have time to do anything. I hit the bus right in the rear end. It threw me forward and I hit the steering wheel and tore the steering wheel down. Both knees were jammed. It knocked the switch off and I had ribs broken. I hit the steering wheel and under the dash. My mouth hit something but I don't know just where. Three ribs were broken and I was cut over the knees, and my lip was cut through and I had three front teeth knocked loose. I still have the teeth and one of them is loose now. I was confined in bed for about two weeks. . . . I was incapacitated for work about six weeks. I was drawing $45.00 a week and expenses at that time. My car was doubled up, the entire front end of it was mashed back. I could not operate it in town that night. The car was worth $500.00 less immediately following the injury than it was immediately preceding the injury. It was about six months old and in excellent condition. Before I attempted to pass the bus I blew my horn three times at least. That was before I fell back on the other side. After I fell back on the other side I applied my brakes until they were locked. The paved surface of that road is approximately 16 feet wide. The shoulders are 10 or 11 feet wide and they were in good condition on that night. There is more shoulder space at the point where the bus stopped than it is ordinarily because of a lane that leads

into the highway at that point and he had at least twice that much. It was in good condition. The bus stopped with all wheels on the paved road. The driver of the bus did not give any signal of his intention to stop. I was on the lookout with reference to the bus and the conditions ahead of me. When the collision came it threw Mr. Cooper forward and his head hit the panel above the windshield and some part of him broke that side. The windshield was in two pieces. I was not rendered entirely unconscious but Mr. Cooper was at the time. . . . Mr. Cooper went with me on a pleasure trip. It was a pleasure trip for both of us. . . . I don't know who put the liquor in the automobile. There was a broken bottle and there was a full pint that had never been broken. When I say broken I mean the seal of the bottle had been broken. I don't know about the pieces of the bottle but I gave Mr. Cooper the money to buy the full pint with, for my wife. The nurse had told me to get it. He bought it at Columbia before we left to go to Creswell; it was Five Crown whiskey. I know about the pint bottle but I don't know about the one-half pint. . . . I blew my horn three times. The bus did not slacken its speed and I never did get abreast the bus. I was 25 or 30 yards behind the bus at all times. I pulled back again behind the bus suddenly and applied my brakes immediately when I saw him stop. . . . When I pulled to my right side again I would say I was the length of the bus from it, behind it. That is when I first pulled back into the line of traffic. At the time the bus stopped I would say I was 20 or 25 feet back of it. My brakes were in good condition. I had had them tightened in Creswell that afternoon. . . . I took one drink that afternoon about 3:00 and I had not taken any since. . . . (Re-direct) The pint of whiskey in the car was purchased for my wife. . . . I did not know the other whiskey was in the car and had never seen it before in my life. My brother-in-law used the car that afternoon. I know that they had been drinking to some extent that afternoon but I did not drink with them. The drink I took about 3:00 in the afternoon was not a big one and it did not put me under the influence of liquor. It was wore off by night and I had had my supper. I left from Mr. Cooper's. When I attempted to pass this bus and turned back it came to a stop almost immediately. I was 20 or 25 feet from it when I saw it was going to stop. When it started to stop I started to pull back and then is when I started applying brakes. I turned out and saw this car coming and when I looked around I saw the bus stop and I pulled back. That was after I got back on the right side. . . . (Re-called) I said that when I was passing as I pulled up to the bus I sounded my horn at least three times. I did not ever get abreast the bus. I said I was 25 or 30 feet when I started pulling back. I cannot say exactly how far I was when I first pulled out and

prior to that time I had sounded my horn three times. The bus did nothing in answer to my signal and so far as I know it did not hear the signal. I was not drinking that night when I left here. I did not take a drink between the time I left Columbia and the time I was hurt and Mr. Cooper did not take a drink."

Dr. C. S. Chaplin testified, in part: "I treated Mr. Cooper. He stayed in my hospital. . . . He had a fractured skull, two ribs broken in the right side and he developed paralysis of his right side and intestines and later developed pneumonia and died. The paralysis proceeded from the skull injury. The skull injury was received from a blow. Prior to that night Mr. Cooper was in good health." There was corroborative evidence to sustain plaintiff's testimony.

*Evidence for Defendant:* C. V. Stevenson testified, in part: "I am employed by the Norfolk Southern Bus Corporation. I was so employed on the 15th day of October, 1938. I was making the run from Williamston to Columbia. I am a regular bus operator and had been operating buses for three years. I started on January 15, 1935. Since that time I have worked continuously at that occupation. I remember October 15, 1938, at the time my bus was struck by an automobile. That night I was driving bus #36. . . . I have tested that bus to ascertain for myself within what is the shortest distance it can be stopped going at the rate of 40 miles an hour and at the rate of speed just using air brakes and not the emergency brakes it takes 111 feet to stop it. I have not tested it with the emergency brake. At the rate of 30 miles per hour the shortest distance the bus can be stopped by the use of the air brakes and not the emergency brakes is 93 feet. The use of the emergency brake makes it stop much more quickly. That bus weighs 14,300 lbs. I took the bus on the night of October 15, 1938, from Williamston, leaving there about 8:50 or maybe it was 8:45, I don't know exactly. I went to Creswell and left there going toward Columbia. On the way from Creswell to Columbia I stopped my bus at or near Travis station to put a passenger off. That night I had only one passenger. I was making a rate of speed prior to the time I stopped of between 35 and 40 miles an hour. I had a passenger to put off in that neighborhood and I got a signal from the pull cord. When I got the signal I turned the lights on and asked him where he wanted to get off and he said, 'Down at the cross-roads.' I then started braking my bus—I had a pretty good way to go to the station. You start applying air brakes— you don't put them on all of a sudden. I had gone after starting to stop probably 100 or 125 feet, or maybe 150 feet, when I was struck by the automobile. I was making a gradual stop. There is a mechanical device on that bus to indicate to the vehicle at the back that it is stopping. When you put your foot on the brake it automatically lights

up your stop lights. There are two of them and they are about 4 or 5 inches in diameter and have 'STOP' written across the glass in them and it is red. I know those lights were working that night because they were working before the wreck and after the wreck. I had checked them in Williamston. I did not hear a horn before I stopped and did not see this automobile at all. I looked in the back of the bus but did not see it. The bus was equipped with rear vision mirrors. It has one inside and also one on the outside. I was around the curve a good way. I don't know exactly how far. Mr. McDuffie crashed into the rear end of my bus. The bus had not come to a dead stop at the time. . . . After the collision I got out of the bus and went back to the car. Both of the occupants were sitting in the car and I had to sort of pull one of the doors open. I tried to talk to them, tried to get them out as soon as I could. Neither of them said anything to me. They did not say anything to me or in my presence. I think they got them in cars and got them away as soon as they could. I assisted in getting them out. I smelled whiskey. I was on the right side, Mr. McDuffie's side, and the rest of them were on the other side. There was whiskey in the car and Mr. Postum, the Chief of Police, took that out. My bus was on the right-hand side of the highway when the car struck me. I had not gotten off the concrete. I meant that my bus went 125 to 150 yards after the signal was given me to stop. Note 125 to 150 feet. . . . That was no regular scheduled bus stop. We don't have any regular stops; we stop and pick up people up and down the road as they come out of the house we stop and pick them up. I have never read our franchise." There was evidence on the part of defendant corroborating Stevenson and that McDuffie was under the influence of whisky. "I observed while we were there talking with him and he was under the influence of whisky or intoxicants."

Julius S. Postum testified, in part: "I saw the stop lights on the bus and saw the lettering on the bulbs. Coming from the rear in a car at night in my judgment the lettering could be distinguished or read about 50 feet. To the best of my knowledge they are around 2 inch lenses. I am talking about my vision."

The evidence on the part of plaintiff was to the effect that he was the owner and driver of a 1938 Model Ford Coach, with his father-in-law, C. B. Cooper, as a guest. He was going home with his father-in-law to Columbia, N. C., after visiting friends in Creswell, N. C. The defendant's bus was leaving Creswell going towards Columbia. He pulled out behind and was driving his car about 200 yards behind the bus and then trailed it for 5 or 6 miles, 100 yards behind the bus, until a curve was passed. He then, for 2 or 3 miles had a straight way and attempted to pass the bus. In order to pass he pulled up behind the

bus, blew his horn and started by, but noticed a car light ahead coming in his direction and pulled back. He did not see the car light until he turned to his left as the bus cut off his view, the bus was considerably wider than his car. He turned back, as he figured he did not have time to pass, as he thought it was dangerous to pass the bus. He pulled his car to the right-hand side about 20 or 25 yards behind the bus. He saw the pavement between his car and the bus and he slowed down when he pulled back—he had speeded up a little but slowed down to about 40 miles an hour. He intended to pull back to the left and in his exact language: "Did not have time before that bus stopped right in front of me and I plunged right into it. It stopped suddenly. I applied my brakes to the extent that they had to be unlocked. They were jammed. There was nothing else I could do to avoid the bus after it stopped suddenly, I didn't have time to do anything. I hit the bus right in the rear end. It threw me forward and I hit the steering wheel and tore the steering wheel down. Both knees were jammed. It knocked the switch off and I had ribs broken. . . . The bus stopped with all wheels on the paved road. . . . The driver of the bus did not give any signal of his intention of stopping. I was on the lookout with reference to the bus and the conditions ahead of me."

I think this evidence sufficient to be submitted to the jury. The evidence on the part of defendant, in the material aspects, contradicted that of plaintiff, but this is for the jury and not us to determine.

The plaintiffs rely chiefly upon the actionable negligence established in the following particulars as alleged in the complaint: "(1) The negligence of the defendant in stopping its bus, at night, with all four wheels on the pavement surface of the highway only 16 feet in width, notwithstanding the good condition and amplitude of the shoulders, in violation of C. S., 2621 (308), or in violation, as the jury was empowered to find, of its common law duty to exercise due care. (2) The negligence of the defendant in suddenly stopping its bus upon the highway, at night, without first ascertaining that the stop could be made in safety, and without signaling its intention to do so, *in violation of C. S., 2621 (301),* and in further violation, as the jury was empowered to find, of its common law duty to exercise due care." The main opinion refers to but does not set forth the statute on the subject, which is as follows: N. C. Code, 1939 (Michie), sec. 2621 (308), has, as to stopping on a highway, a double provision: "(1) No person shall park (2) or *leave standing any vehicle whether attended or unattended,* upon the paved or improved or main traveled portion of any highway outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway." The proviso reads as follows: *"In no event shall any person park*

*or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon,* nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in both directions upon such highway." The other proviso is not material to the facts in this case, nor does (c) which is applicable to crippled vehicles. (Italics mine.)

The main opinion repeals the provisions of this law. It will be noted that the above statute uses the language "outside of a business or residence district." In fact, the decision in the main opinion is not applicable, the stopping was not in a "business or residence district." The word "park" is not appropriate to the facts here.

In *S. v. Carter,* 205 N. C., 761 (763), it is stated: "This word is in general use, with reference to motor driven vehicles, it means the permitting of such vehicles to remain standing on a public highway or street, while not in use. 42 C. J., 613; C. S., 2621 (66)." *Stallings v. Transport Co.,* 210 N. C., 201 (203).

The whole statute is construed in *Lambert v. Caronna,* 206 N. C., 616. At p. 620, it is said: "The court below charged the law fully set forth under (a) *supra.* Defendant contends that the court below omitted to charge the law under (c). We see no error in the exclusion of (c) in the charge. The entire evidence of defendant was that he had a 'flat tire,' a 'puncture.' The tire was deflated and it was necessary for him to stop, in so doing, he should have complied with the rule of the road (a), *supra,* the evidence in no way brought him under the provisions of (c). No one testified the Pontiac was disabled in any manner except by a flat tire, or that it could not have been stopped so as to leave fifteen unobstructed feet for the passage of the Chrysler. The defense below was that 15 or more feet were in fact left clear on the hard surface. But this defense the jury ignored by the verdict." The main opinion overrules the statute and this decision.

In Vol. 2, Cyc. Automobile Law and Practice, sec. 1192, pp. 326-7, it is written: "In several jurisdictions there are statutes providing that no vehicle shall be parked or left standing on the highway in such manner that there shall not be a space of a specific number of feet for the passage of other vehicles. *A failure to leave the required unobstructed passage way constitutes negligence, unless the stopping is due to some unavoidable mishap, such as an accident wrecking the car,* where, if the owner of the car is using due diligence to procure its removal, the statute does not apply. *A statute requiring a driver stopping on the highway to leave a required number of feet for passage for other vehicles is applicable where an automobile collided with a parked truck,* although no other car

was passing," citing a wealth of authorities (italics mine).  *Smithwick v. Pine Co.,* 200 N. C., 519.

*A clear analysis of a statute in all respects identical with our own,* except that, where impracticable to stop entirely on the shoulder, it required a space of 10 feet instead of 15 feet to be left open and unobstructed, will be found in *Fontaine v. Charas* (N. H.), 181 Atl. Rep., 417 (418), where the Court said: "The record is clear to the effect that it was 'practicable' for the defendant to have driven his car off of 'the paved or improved or main traveled portion' of the highway at the place where the accident occurred.  It also appears to be conceded that his car was not disabled prior to the collision, and that the accident did not occur in a business or residence district.  It does not appear, however, how long his car was stationary before the accident.  From this lack of evidence the defendant contends that there is no evidence of 'parking.' Were 'parking' the only act prohibited, it might be necessary to attempt a definition of that rather loose word as it is used in the statute, but since it is illegal not only to 'park' but also to 'leave standing,' we are of the opinion that the defendant's act of stopping where he did is sufficient to invoke the statute.  To 'park' may imply halting a vehicle for some appreciable length of time, but there is no such connotation to be drawn from the words to 'leave standing any vehicle, whether attended or unattended.'  We believe that by the use of this phrase the Legislature intended to make illegal any voluntary stopping of a vehicle on the highway for any length of time, be that length of time long or short, except, of course, such stops as the exigencies of traffic may require.  It therefore follows that the defendant was guilty of a violation of the statute in stopping on the traveled part of the highway when he could have driven off to the side, and it becomes unnecessary to consider the view which could have been obtained of his car or the clear space available for passage by it."

The law is settled that the negligence relied on must be the proximate cause of the injury.  In *Burke v. Coach Co.,* 198 N. C., 8 (13), the rule is laid down as follows: "There is no evidence as to how the injury occurred, and the mere fact of the injury is in itself ordinarily no evidence of negligence.  'The breach of a statute is negligence *per se,* but there must be a causal connection between the disregard of the statute and the injury inflicted.'  *Ledbetter v. English,* 166 N. C., 125, 81 S. E., 1066.  Again it has been held in *Chancey v. R. R.,* 174 N. C., 351, 93 S. E., 834, that 'the rule was recently stated to be, that however negligent a party is, if his act stands in no causal relation to the injury, it is not actionable.' "

The authorities from this State so clearly support the plaintiffs' position as to render unnecessary a citation of authority from other juris-

dictions. *Williams v. Express Lines,* 198 N. C., 193; *Stovall v. Ragland,* 211 N. C., 536; *Cole v. Koontz,* 214 N. C., 188, and cases cited; *Smith v. Coach Co.,* 214 N. C., 314; *Clarke v. Martin,* 215 N. C., 405; *Holland v. Strader,* 216 N. C., 436; *Christopher v. Fair Assn.,* 216 N. C., 795; *Bechtler v. Bracken,* 218 N. C., 515.

The foregoing cases, variously, deal with each of the questions considered here, negligence, contributory negligence, and proximate cause. Indeed, no authority is necessary for the proposition that the violation of a statute, designed for the promotion of public safety, constitutes negligence *per se,* and that the question of proximate cause, as in every case where the minds of men might disagree (*Harton v. Telephone Co.,* 141 N. C., 455), is for the jury. Indeed, while the instant case seems to find support from each and all of the cases cited, *supra,* they are practically on "all-fours" with *Smith v. Coach Co.,* 214 N. C., 314, wherein each of the questions here presented was resolved in favor of the plaintiffs. Furthermore, in the Leary case it will be noticed that the only contributory negligence pleaded is such as is imputable to the intestate Cooper as a joint adventurer with McDuffie—a theory of the case which has not been sustained. He was a guest in the car driven by McDuffie. To bar his recovery the negligence of McDuffie must be the sole proximate cause of the injury.

In *Holland v. Strader, supra, Devin, J.,* for the Court held (headnote) : "Evidence that defendant stopped his car suddenly without giving the warning signal required by statute, and that the car in which plaintiff was riding as a guest, traveling on the highway in the same direction behind defendant's car, collided with the rear of defendant's car, causing the injury in suit, is held sufficient to be submitted to the jury on the issue of defendant's negligence, notwithstanding defendant's evidence that the cars were in a long line of traffic going to a football game and that the negligence of the driver of the car in which plaintiff was riding in failing to keep a proper lookout and control over the car, and in following too closely behind defendant's car, was the sole proximate cause of the injury, the conflicting contentions raising a question of fact for the determination of the jury." At p. 438, it is said: "According to the uniform decisions of this Court, the violation of a statute imposing a rule of conduct in the operation of a motor vehicle and enacted in the interest of safety has been held to constitute negligence *per se,* but before the person claiming damages for injury sustained can be permitted to recover he must show a causal connection between the injury received and the disregard of the statutory mandate. This has been the established rule in North Carolina," citing authorities. *Bechtler v. Bracken, supra.*

Other authorities are to the effect that, in the absence of statutory prohibition, defendant's negligence in stopping the bus with all four wheels on the pavement, under the conditions and circumstances appearing of record, was for the determination of the jury. *D'Allesandero v. Bechtol*, 104 Fed., 845 (847).

Nor can it be reasonably contended that the negligence thus established bore no causal relation to the injuries sustained by plaintiffs. *Smithwick v. Pine Co., supra; Lambert v. Caronna, supra; Bechtler v. Bracken, supra; Fontaine v. Charles, supra;* and other cases cited *supra*, upon the question of negligence. *Lancaster v. Greyhound Corp.*, 219 N. C., 679.

N. C. Code, *supra*, sec. 2621 (296), is as follows: "(a) The driver of any such vehicle overtaking another vehicle proceeding in the same direction shall pass at least two feet to the left thereof, and shall not again drive to the right side of the highway until *safely* clear of such overtaken vehicle. (b) The driver of an overtaking motor vehicle not within a business or residence district, as herein defined, shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction."

On the second aspect I quote the following statute in N. C. Code, *supra*, sec. 2621 (301): "Signals on starting, stopping or turning. (a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement. (b) The signal herein required shall be given by means of the hand and arm in the manner herein specified 'or by any approved mechanical or electrical device, except that when a vehicle is so constructed or loaded as to prevent the hand and arm signal from being visible, both to the front and rear, the signal shall be given by a device of a type which has been approved by the department.' Whenever the signal is given the driver shall indicate his intention to start, stop or turn by extending the hand and arm from and beyond the left side of the vehicle as hereinafter set forth. Left turn—hand and arm horizontal, forefinger pointing. Right turn—hand and arm pointed upward. Stop—hand and arm pointed downward. All signals to be given from left side of vehicle during last fifty feet traveled."

One driving an automobile upon a public highway is required by provision of this section to give specific signals before stopping or turning thereon, and the failure of one so driving to give the signal required

by statute is negligence, and when the proximate cause of injury, damages may be recovered therefor by the one injured. Headnote, *Murphy v. Asheville-Knoxville Coach Co.,* 200 N. C., 92 (93) ; *Mason v. Johnson,* 215 N. C., 95.

In 3-4 Huddy Cyc. of Automobile Law (9 Ed., 1931), sec. 145, pp. 245-6, we find: "Statutes and municipal ordinances in many cases require the driver of a motor vehicle to indicate his intention of bringing his car to a stop; and a violation of such a regulation may form a basis for a charge of negligence. Even in the absence of such a regulation, a driver is not relieved of the duty to use some care in respect to traffic in the rear; and whether the failure to give a signal to the rear is or is not negligence depends on the circumstances of the case, and usually is a question of fact for the jury. A signal that a forward vehicle is to stop should not be given unless the driver actually does so." *Murphy case, supra,* p. 103.

The evidence was to the effect that the driver of the car in the rear of the bus complied with the statute. As to negligence, the burden of this issue was on the plaintiffs.

As to contributory negligence of McDuffie, the burden of this issue was on the defendant, and we think it was a fact for the jury to determine. Postum, a witness for defendant, testified that the stop lights on the rear of the bus "could be distinguished or read about 50 feet." The plaintiff testified that "the driver of the bus did not give any signal of his intention to stop." From the authorities cited, I think the plaintiffs' evidence amply sufficient to justify the court below in overruling defendant's motion for judgment as in case of nonsuit.

I have examined the North Carolina cases cited by defendant and think they are distinguishable from the facts in the present action. If the New Jersey case cited by defendant is in point (*Hochberger v. Wood, Inc.,* 124 N. J. L., 518), and perhaps other cases not in this jurisdiction, we must abide by our own statute and decisions on the subject.

It is so well settled by numerous authorities, that I quote none, that as all the evidence showed that C. B. Cooper was a guest in the car of N. P. McDuffie, therefore he was not guilty of contributory negligence. The main opinion wipes out a statutory law made for the protection of the public.

Taking the charge as a whole, and not disconnectedly and disjointedly, we think the court below charged the law applicable to the facts in the case. On the first aspect, the statute is in clear language. Sec. 2621 (308), *supra.* It may be noted that the material allegation in the complaint was as to the negligence of the bus driver in "stopping suddenly, without giving warning." The issue submitted, and answered "Yes" by the jury, is "Was the plaintiff injured by the negligence of the

defendant, *as alleged in the complaint?"* The jury answered both aspects in favor of plaintiff.

The defendant was operating its bus, weighing 14,300 pounds, at night on a perfectly straight highway, at 35 to 40 miles per hour, on a paved road 16 feet wide at the place of the collision. The shoulders at that place were 10 or 11 feet wide and in good condition. A passenger in the bus gave the signal to stop, and in the exercise of due care and in accordance with the statute the driver could have complied with the statute and given the driver of the car in the rear notice of his intention to stop. This he did not do. He could have left a clear and unobstructed width on the main traveled portion of the highway at least 15 feet opposite the bus, in accordance with the statute and in the exercise of due care. He did not do this. He stopped suddenly on the paved portion of the highway, without giving any signal of his intention so to do, or leave space as is required by the statute. The driver of the car in the rear, to avoid the impact, applied his brakes to such a degree that they had to be unlocked; but he hit the bus in the rear and the collision killed a guest in the car and seriously injured the driver of the car. The evidence was to the effect that the driver of the car was using due care and obedient to the law of the road—the defendant was not. It is of utmost importance to the traveling public on the highways that the statutes governing the rule of the road be strictly observed to avoid accident. These rules, when carefully observed by drivers of automobiles and large buses and heavy motor vehicles carrying freight, make for safety on the highways. The law in regard to the highways represent the experience of years, made to be observed to avoid accidents and should not be repealed, as is done in the main opinion. The facts were found by the jury in accordance with the version given by the driver of the automobile, on the record there was no prejudicial or reversible error. For the reasons given, I dissent from the main opinion.